## LATSON *v.* WELLS, warden, etc.

1. Penal Code (1910), § 715, providing that "If any person shall contract with another to perform for him services of any kind, with intent to procure money or other thing of value thereby, and not to perform the service contracted for, to the loss and damage of the hirer, or, after having so contracted, shall procure from the hirer money, or other thing of value, with intent not to perform such service, to the loss and damage of the hirer, he shall be deemed a common cheat and swindler," and upon conviction shall be punished as for a misdemeanor, is not in conflict with the thirteenth amendment to the constitution of the United States, providing: "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."

2. Penal Code (1910), § 716, is as follows: "Satisfactory proof of the contract, the procuring thereon of money or other thing of value, the failure to perform the services so contracted for, or failure to return the money so advanced with interest thereon at the time said labor was to be performed, without good and sufficient cause, and loss or damage to the hirer, shall be deemed presumptive evidence of the intent referred to in the preceding section." The provisions of this section, and those of the section referred to in the preceding note, are the provisions, respectively, of the first and second sections of the act of 1903 (Acts 1903, p. 90). The third and only other section of that act provides for a repeal of conflicting laws. The title of the act is ·as follows: "An act to make it illegal for any person to procure money, or other thing of value, on a contract to perform services, with intent to defraud, and to fix the punishment therefor, and for other purposes." *Held:*

(a) The main legislative intent and purpose being to make the acts referred to in the first section a crime and to provide for· its punishment, the second section, simply providing that proof of specified acts "shall be deemed presumptive evidence of the intent referred to," is· not essen-

tial to the carrying out of such legislative intent and purpose. This rule of evidence, if eliminated from the act, would not affect the main legislative scheme and purpose; and if the second section of the act is unconstitutional, the whole act would not be void, and the provisions of the first section would be constitutional and valid.

(b) Where one pleads guilty to accusations in a city court charging him with violating the first section of the act (embodied in the Penal Code of 1910, § 715, above quoted), he can not subsequently be released from custody, even if the provisions of the second section of the act (embodied in Penal Code of 1910, § 716) are unconstitutional, the rule of evidence prescribed in the latter section not having been used against him.

AUGUST 17, 1911.

Habeas corpus. Before Judge Whipple. Dooly superior court. February 18, 1911.

*R. N. Holtzclaw,* for plaintiff.

*W. F. George,* for defendant.

HOLDEN, J. Lawrence Latson was arraigned in the city court of Vienna on two accusations, each of which charged a violation of the Penal Code (1910), § 715. He pleaded guilty, and was sentenced to pay a fine, or serve 12 months on the chaingang in each case. While he was in the custody of the defendant in error as warden or superintendent of the chaingang of Dooly county, his wife applied for a writ of habeas corpus. Upon the trial of the case the statements in the application for the writ and the defendant's answer thereto were admitted to be true. To the judgment of the court remanding Lawrence Latson to the custody of the defendant in error, and refusing to order his release, the plaintiff in error excepted.

1. Penal Code (1910), § 715, under which the accusations against Latson were drawn and which he was charged with violating, is as follows: "If any person shall contract with another to perform for him services of any kind, with intent to procure money or other thing of value thereby, and not to perform the service contracted for, to the loss and damage of the hirer, or, after having so contracted, shall procure from the hirer money, or other thing of value, with intent not to perform such service, to the loss and damage of the hirer, he shall be deemed a common cheat and swindler, and upon conviction shall be punished as for a misdemeanor." The plaintiff in error contends that the provisions of this section are unconstitutional, because of being in violation of the thirteenth amendment to the constitution of the United States, providing:

"Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their juris-diction." The act under review does not seek to punish one for the mere breach of a contract, or the mere failure to pay a debt. The provisions of the act are aimed at the fraudulent practices therein referred to. It is the intent to defraud and the actual defrauding of another by virtue of such intent being carried out that the act makes a crime. The section above quoted is not susceptible of the construction that it seeks to punish one because of a failure to per-form a contractual obligation, or to pay a debt, but the gist of the crime referred to in the act is the fraudulent intent with which one obtains "money or other thing of value" from another, who is de-frauded by the former by reason of the carrying out of such intent. We fail to see any constitutional objection to a statute making it a crime for one wilfully and knowingly to defraud another. If one knowingly and wilfully defrauds another "of money or other thing of value," as set forth in the statute above quoted, it is no less a wrong than if he defrauds him in some other way. We have sev-eral statutes making fraudulent practices whereby one defrauds another a crime. See Penal Code (1910), §§ 703 et seq. The leg-islative department of the government is not without authority to make an act of fraud, whereby another sustains loss because of the commission of the fraud, a crime. The mere fact that the party committing the fraud is left, after its commission, under an obliga-tion to the party defrauded to pay him a debt, or to perform a con-tract made with him, which were involved in the transaction in which the fraud was committed, does not make the act denouncing the fraud unconstitutional on the ground that it seeks to punish one for failure to pay a debt, or to perform a contract. *Banks* v. *State,* 124 *Ga.* 15 (52 S. E. 74, 2 L. R. A. (N. S.) 1007) ; *Townsend* v. *State,* Ibid, 69 (52 S. E. 293) ; *Lamar* v. *State,* 120 *Ga.* 312 (47 S. E. 958) ; *Lamar* v. *Prosser,* 121 *Ga.* 153 (48 S. E. 977) ; *Mulkey* v. *State,* 1 *Ga. App.* 521 (57 S. E. 1022).

In the case of Bailey v. State, 158 Ala. 18 (48 So. 498, 499), the court, in a decision involving an act similar to the one above referred to, said: "In Ex parte Riley, 94 Ala. 82, 83, 10 South. 528, 529, it was said: 'As the intent is the design, purpose, resolve, or determination in the mind of the accused, it can rarely be proved

by direct evidence, but must be ascertained by means of inferences from the facts and circumstances developed by the proof. In the absence, however, of evidence from which such inferences may be drawn, the jury are not justified in indulging in mere unsupported conjectures, speculations, or suspicions as to the intentions which were not disclosed by any visible or tangible act, expression, or circumstance.' It is no doubt true that the difficulty in proving the intent, made patent by that decision, suggested the amendment of 1903 (Gen. Acts 1903, p. 345) to the statute, which provides that the refusal or failure of a person who enters into such contract to perform such act or service, or refund such money, or pay for such property, without just cause, shall be prima facie evidence of the intent to injure or defraud his employer." Counsel for the plaintiff in error rely on the decision of the Supreme Court of the United States in the case of Bailey *v.* Alabama, 219 U. S. 219 (31 Sup. Ct. 145). In that case the court had under consideration the Alabama statute referred to in the decision from which we have just quoted, which statute is similar to the Georgia statute, and summarized it as follows on p. 227: "The section of the Code as it stood before the amendments provided that any person who with intent to injure or defraud his employer entered into a written contract for service and thereby obtained from his employer money or other personal property, and with like intent and without just cause, and without refunding the money or paying for the property, refused to perform the service, should be punished as if he had stolen it." This section of the Alabama Code (§ 4730, Code of 1896) was amended by the legislature of that State in 1903 and 1907, by which amendments there was added thereto a provision that "the refusal or failure of any person, who enters into such contract, to perform such act or service or to cultivate such land, or refund such money, or pay for such property, without just cause, shall be prima facie evidence of the intent to injure his employer or landlord or defraud him." Our interpretation of the decision of the Supreme Court of the United States is that it only decides that the above-quoted provisions of the Alabama law, contained in the amendments of 1903 and 1907 to section 4730 of the Code of Alabama of 1896, are unconstitutional. In the concluding portion of the opinion, on p. 245, Mr. Justice Hughes states: "The act of Congress deprives of effect all legislative measures of any

State through which directly or indirectly the prohibited thing, to wit, compulsory service to secure the payment of a debt, may be established or maintained; and we conclude that § 4730, as amended, of the Code of Alabama, in so far as it makes the refusal or failure to perform the act or service, without refunding the money or paying for the property received, *prima facie* evidence of the commission of the crime which the section defines, is in conflict with the thirteenth amendment and the legislation authorized by that amendment, and is therefore invalid." We do not understand that the Supreme Court of the United States decided, or intended to decide, that the provisions in section 4730 of the Code of Alabama of 1896, as this section stood before the amendments thereto of 1903 and 1907, which provisions are similar to those in the Penal Code (1910), § 715, of this State, were unconstitutional. We have been requested to review and overrule the decisions in the cases of *Lamar* v. *State, Banks* v. *State,* and *Lamar* v. *Prosser,* supra. Under the view we take of the case, as expounded in the subsequent division of the opinion, the question as to whether or not these decisions should be overruled in so far as they hold the provisions of the Penal Code (1910), § 716, are constitutional, is not one for decision under the record before us. In so far as these decisions hold the provisions of the Penal Code (1910), § 715, constitutional we decline to overrule them.

2.   It is contended that Penal Code (1910), § 716, which immediately follows the section set out in the 1st division of the opinion, violates the provision of the constitution above quoted, and that the two sections, when construed together, make section 715 also unconstitutional.   Section 716 is as follows: "Satisfactory proof of the contract, the procuring thereon of money or other thing of value, the failure to perform the services so contracted for, or failure to return the money so advanced with interest thereon at the time said labor was to be performed, without good and sufficient cause, and loss or damage to the hirer, shall be deemed presumptive evidence of the intent referred to in the preceding section."   These two sections of the Code are sections 1 and 2 of the act of 1903 (Acts 1903, p. 90).   The 3d and only other section of the act merely provides for a repeal of all conflicting laws.   We deem it unnecessary to decide the question as to whether or not the 2d section of the act embodied in section 716

of the Penal Code of 1910 is unconstitutional. The main purpose of this enactment was to make certain acts enumerated in the first section embodied in section 715 of the Penal Code of 1910 constitute a crime, the chief ingredient of which was the intent referred to in that section. This section alone provides what shall constitute a crime, and fixes the punishment therefor. The title to the act is as follows: "An act to make it illegal for any person to procure money, or other thing of value, on a contract to perform services, with intent to defraud, and to fix the punishment therefor, and for other purposes." It will be seen that nothing is said in the title with reference to what is contained in the 2d section of the act. The main legislative intent and purpose being to make the acts referred to in the first section a crime and to provide for its punishment, the second section, simply providing that proof of specified acts "shall be deemed presumptive evidence of the intent referred to," is not essential to the carrying out of such legislative intent and purpose. This rule of evidence, if eliminated from the act, would not affect the main legislative scheme and purpose; and if the second section of the act is unconstitutional, the whole act would not be void, and the provisions of the first section would be constitutional and valid. *Deadwyler* v. *Karow,* 131 *Ga.* 227 (62 S. E. 172, 19 L. R. A. (N. S.) 197). Hence, we deem it unnecessary to decide whether or not the second section of the act is unconstitutional. Courts will not decide upon the constitutionality of an act, at the instance of a party, unless it is put in operation against him. In this case, the rule of evidence embodied in the second section of the act was not used against Latson, for the reason that he pleaded guilty to the accusations against him, charging him with the violation of the provisions of the first section of the act. If he had been put on trial before a jury, and the rule of evidence referred to in the second section of the act had been given in charge to the jury as the law, or if he had been tried before the judge without a jury, the right would have existed to have brought into question, in a proper way, the constitutionality of the second section of the act. But he pleaded guilty to violating the first section of the act; and if the second section of the act, relating to a rule of evidence made applicable to the trial of one charged with the offense denominated by the first section, was unconstitutional, he can not be released from custody because of

the unconstitutionality of the provision relating to this rule of evidence. He can not properly contend that he pleaded guilty because if he had gone to trial an unconstitutional act relating to a rule of evidence would have been used against him; for the reason that if the enactment relating to such rule of evidence is unconstitutional, it is presumed the court trying him would have so declared and would not have allowed it to be used against him on his trial. We make no decision on the question as to whether or not the second section of the act is constitutional. The court committed no error in refusing to release Latson from the custody of the defendant in error.

*Judgment affirmed. Beck, J., absent. The other Justices concur.*