## WILSON v. THE STATE.

Section 1 of the act of August 15th, 1903 (Acts 1903, p. 90, Penal Code, § 715), provides: "If any person shall contract with another to perform for him services of any kind, with intent to procure money or other thing of value thereby, and not to perform the service contracted for, to the loss and damage of the hirer, or, after having so contracted, shall procure from the hirer money, or other thing of value, with intent not to perform such service, to the loss and damage of the hirer, he shall be deemed a common cheat and swindler, and upon conviction shall be punished as for a misdemeanor." Section 2 of the same act (Penal Code, § 716) provides: "Satisfactory proof of the contract, the procuring thereon of money or other thing of value, the failure to perform the services so contracted for, or failure to return the money so advanced with interest thereon at the time said labor was to be performed, without good and sufficient cause, and loss or damage to the hirer, shall be deemed presumptive evidence of the intent referred to in the preceding section." *Held:*

1. Section one is to be construed as denouncing as fraudulent practices of the character therein described, and providing for the punishment of persons violating its terms, the legislative purpose being, not to punish for a mere failure to comply with the obligation, but for the procurement of money or other thing of value with the fraudulent intent not to perform the service.

2. Section two is merely a rule of evidence.

3. The two sections are severable, and the first may exist independently of the latter.

4. Under the construction above given, no part of the legislation mentioned offends against the prohibition of the thirteenth amendment to the Federal constitution against involuntary servitude except as punishment for crime whereof the party shall have been duly convicted, or against the provisions forbidding peonage, found in the United States Revised Statutes, §§ 1990, 5526, enacted to secure the enforcement of such amendment.

5. A person on trial charged with such an offense is incompetent as a witness, but he may make such a statement before the jury as he desires, to which the jury may give such credit as in their opinion its truth entitles it to receive, even to the extent of believing it in preference to the sworn testimony.

6. The fact that one on trial, charged with the offense provided for in this statute, can not be heard to testify as a witness in his own behalf does not affect the validity of either section of the statute.

7. The case of Bailey v. Alabama, 219 U. S. 219, distinguished.

ꞲUGUST 14, 1912.

Question of constitutional law; from Court of Appeals. 3606.

The Court of Appeals certified for decision the following:

"The plaintiff in error was convicted of a violation of the act of August 15, 1903 (Acts 1903, p. 90), codified in sections 715 and 716 of the Penal Code of 1910. The second section of said

act, codified in section 716 of the Penal Code, is as follows: 'Satisfactory proof of the contract, the procuring thereon of money or other thing of value, the failure to perform the services so contracted for, or failure to return the money so advanced with interest thereon at the time said labor was to be performed, without good and sufficient cause, and loss or damage to the hirer, shall be deemed presumptive evidence of the intent referred to in the' first section of the act, codified in section 715 of the Penal Code of 1910. The presumption raised by the second section of the act in question was used against the plaintiff in error on his trial.

"Does the legislation above referred to offend against the prohibition of the 13th amendment to the Federal constitution against involuntary servitude except as punishment for crime whereof the party shall have been duly convicted, and against the provision forbidding peonage, found in U. S. Revised Statutes, §§ 1990 and 5526, enacted to secure the enforcement of such amendment, especially since under the laws of this State the accused can not testify for the purpose of rebutting the statutory presumption against him thus raised?"

The caption of the act is: "An act to make it illegal for any person to procure money, or other thing of value, on a contract to perform services, with intent to defraud, and to fix the punishment therefor, and for other purposes."

Section one is: "Be it enacted by the General Assembly, and it is hereby enacted by authority of the same, that from and after the passage of this act, if any person shall contract with another to perform for him services of any kind, with intent to procure money or other thing of value thereby, and not to perform the service contracted for, to the loss and damage of the hirer, or, after having so contracted, shall procure from the hirer money, or other thing of value, with intent not to perform such service, to the loss and damage of the hirer, he shall be deemed a common cheat and swindler, and upon conviction shall be punished as prescribed in section 1039 of the Code."

Section two is the same as copied in the question propounded by the Court of Appeals. The only remaining part of the act is section three, which repeals conflicting laws.

*C. H. Beazley* and *D. J. Ragan,* for plaintiff in error.

*Ware G. Martin, solicitor,* contra.

ATKINSON, J. The construction of a State statute is a matter for the State courts, and the Federal courts will accept the construction so made by the State courts. *Cargill v.* Minnesota, 180 U. S. 452 (21 Sup. Ct. 423, 45 L. ed. 619). Whether the statute is violative of some provision of the constitution of the United States furnishes ground for jurisdiction in the Supreme Court of the United States. The question propounded by the Court of Appeals covers both section 715 and section 716 of the Penal Code. These two sections were codified from different sections of the act of 1903 (Acts 1903, p. 90). Section 715 provides that certain things shall constitute a misdemeanor. Section 716 provides that proof of certain things, comprehended by the preceding section, shall be deemed "presumptive evidence of the intent" therein mentioned. The first specified section deals with a substantive offense; the second deals with a rule of evidence in proving the commission of the offense. It is a well-settled rule of constitutional law that if two parts of an act, or two laws or sections of the code in regard to the same subject-matter, are severable in character, so that one may exist and carry out the legislative intent independently of the other, the holding of one to be invalid will not necessarily result in declaring the other invalid. The two designated sections are severable, and the former can stand independently of the latter; and hence, the offense declared by section 715 may exist, and that section be a constitutional and valid law, whether or not section 716 is constitutional. *Latson v. Wells,* 136 Ga. 681 (71 S. E. 1052).

This court has several times construed section 715. It has uniformly been held that the offense therein declared was not for failure to perform service or pay debts, but was for fraudulently procuring money, or other thing of value; that the fraudulent conduct of the defendant was the gist of the crime, not merely his failure to perform his contract. *Lamar v. State,* 120 Ga. 312 (47 S. E. 958); *Lamar v. Prosser,* 121 Ga. 153 (7), 154 (48 S. E. 977); *Vinson v. State,* 124 Ga. 19 (2), 21 (52 S. E. 79); *Townsend v. State,* 124 Ga. 69 (52 S. E. 293); *Banks v. State,* 124 Ga. 15 (4), 17 (52 S. E. 74, 2 L. R. A. (N. S.) 1007); *Sterling v. State,* 126 Ga. 92 (54 S. E. 921); *Vance v. State,* 128 Ga. 661 (57 S. E. 889); *Dyas v. State,* 126 Ga. 557 (55 S. E. 488); *Latson v. Wells,* supra. Substantially the same distinction is well-recog-

nized as existing between merely buying on a credit and failing to pay, and fraudulently procuring goods, which constitutes the person doing it a common cheat and swindler. In order to convict a defendant of an offense described in section 715, the defendant must not only make a contract for service and violate it, but it must be with the fraudulent intent to procure money or other thing of value thereby, and not to perform the service contracted for, to the loss and damage of the hirer; or after having so contracted, to be guilty he must procure from the hirer money, or other thing of value, with the fraudulent intent not to perform such service, to the loss and damage of the hirer. Thus it will be seen that mere breach of contract or failure to perform the service does not render the defendant guilty of the offense, but there must be added the fraudulent intent to procure money, or other thing of value, or the fraudulent procurement of it with intent not to perform the service, to the loss and damage of the hirer. It may be said that it makes no difference to the defendant whether he is imprisoned for breach of contract or for fraud. Perhaps not, but where his transaction partakes of fraud the State may condemn it. *Lamar v. Prosser,* supra. Construing as above indicated section 715 of the Penal Code, and that portion of the act from which it was codified, they are not violative of the thirteenth amendment to the constitution of the United States (*Latson v. Wells,* supra), or in conflict with the provisions of the Revised Statutes of the United States, §§ 1990, 5526, forbidding peonage. *Townsend v. State,* supra.

The right of the accused to make a statement will be further mentioned while discussing the next section. It is sufficient at this time to say that the mere fact that a person accused of crime is not allowed to testify as a witness in this State does not prevent him from being convicted of crime. See *Vance v. State,* supra. If it did, the whole Penal Code might as well be declared unconstitutional. At common law the accused could not testify, but it could not be contended that his conviction would on that account be violative of the guarantee of due process of law contained in Magna Charta. To attempt by penal law to compel a person to render service to another involuntarily may constitute peonage; but it is not peonage for the State to punish one by compelling him to serve the State as a punishment for his crime committed

by defrauding his employer of money or other thing of value. The two are as wide apart as crime and debt.

We now come to consider section 716 of the Penal Code. This provides that satisfactory proof of the contract, the procuring thereon of money, or other thing of value, the failure to perform the service so contracted for, or failure to return the money so advanced with interest thereon at the time the labor was to be performed, without good and sufficient cause, and loss or damage to the hirer, "shall be deemed presumptive evidence of the intent referred to in the preceding section." There are many cases recognized in the law in which presumptions arise from proof of certain facts, or where proof of certain facts constitutes presumptive evidence of criminal intent. Proof of possession of stolen property shortly after the theft, if unexplained, may authorize a finding of guilty intent on the part of the possessor; proof of the killing of a human being, without any evidence tending to show justification or mitigation, will authorize a presumption of malice. At common law, evidence that a passenger was injured by the breaking of the vehicle of the hirer, or defect in his road, was sufficient to authorize a presumption of negligence. Under statutes, proof of injury by a carrier is sometimes declared sufficient to raise a presumption of negligence. Numerous illustrations might be given where the legislature has declared that proof of certain facts is sufficient to raise a presumption of guilty intent or like elements of a crime. See instances cited in *Banks* v. *State,* supra. If such legislative provisions are not "purely arbitrary, and there is a rational relation between the two facts, and the accused is not deprived of a proper opportunity to submit all the facts bearing upon the issue, it has been held that such statutes do not violate the requirements of due process of law." Bailey *v.* Alabama, 219 U. S. 219, 238 (31 Sup. Ct. 145, 55 L. ed. 191), and citations; see also *Banks* v. *State,* supra. In the case of Bailey *v.* Alabama, supra, a law of the State of Alabama was under consideration. As it originally stood in the code, the section provided that any person who, with intent to injure or defraud his employer, entered into a written contract for service, and thereby obtained from his employer money, or other personal property, and, with like intent, and without just cause, and without refunding the money or paying for the property, refused to perform the service,

should be punished as if he had stolen it. This section was so amended as to make the refusal or failure to perform the service, or to refund the money, or pay for the property, without just cause, prima facie evidence of an intent to injure or defraud.

While peonage and enforced performance of labor contracts were discussed at length, the actual ruling, as shown both by the syllabus and the opinion, was that the section of the Code of Alabama, as amended, "in so far as it makes the refusal or failure to perform labor contracted for, without refunding the money or paying for property received, prima facie evidence of the commission of the crime defined by such section, and when read in connection with the rule of evidence of that State, that the accused can not testify in regard to uncommunicated motives, is unconstitutional as in conflict with the thirteenth amendment and of the legislation authorized by it and enacted by Congress." Pages 220, 228, 245.

There are several material differences between the law of Alabama, then under consideration, and the law of this State, as heretofore construed by this court. In the first place, the Alabama statute provided that "Any person who with intent to injure or defraud his employer," etc. We do not stop to discuss whether the mere intent to injure may be different from the intent to defraud. Under that statute one half of the fine went to the employer, thus compensating or benefiting him by convicting the accused, so that the punishment in part operated to reimburse or repay the debt of the employer and reduce his loss. The ruling did not rest entirely upon the statute, but also upon the rule of evidence that the accused could not testify in his own behalf explanatory of his uncommunicated intent. The statute of this State does not contain such a provision, and the prisoner has greater latitude in regard to proving the intent with which he acted. Under the statute of this State (Penal Code, § 716), in order to constitute "presumptive evidence of the intent," satisfactory proof of the contract, the procuring thereon of money, or other thing of value, the failure to perform the service so contracted for, or failure to return the money so advanced, with interest thereon, at the time the labor was to be performed, without good and sufficient cause, and loss or damage to the hirer, is necessary. The accused may show that there was good and sufficient cause, as well as negative the other

things in that section. He can not testify as a witness in this State (Penal Code, § 1037, par. 2), but he has the right to make to the court and jury such statement, not under oath, as he may deem proper in his defense, and, though not compelled to answer any questions on cross-examination should he think proper to decline to do so, his statement shall have such force as the jury may think right to give it, and "they may believe it in preference to the sworn testimony in the case." Penal Code, § 1036. In this State, therefore, the accused may state what was his real intent, may deny the evidence introduced, and explain or rebut the presumptive evidence of his intent, if it is raised under the statute. True, the jury are not obliged to believe his statement, or give it any more credit than in their opinion its truth entitles it to receive. But, for that matter, they would not be obliged to believe him if he could be sworn as a witness. His interest would go to his credit, and the jury would not be bound to credit his testimony merely because he gave it under oath. Thus it appears that the statute in this State differs in material particulars from that of Alabama, which was under consideration by the Supreme Court of the United States in the Bailey case; and also that the rule of evidence which was read into the Alabama statute is different from the rule in this State. The variance is of such character that the ruling in the case cited could not be properly applied as authority for holding section 716 of the Penal Code of Georgia invalid. This statute has heretofore been held not to be violative of the thirteenth amendment to the constitution of the United States, nor invalid as being in conflict with sections 1990 and 5526 of the Revised Statutes forbidding peonage. *Townsend* v. *State, 124 Ga. 69 (52 S. E. 293).* In that case no separate attack was made on section two of the act (which is Penal Code section 716), but the attack was on the act in its entirety, which included section two.

Having already held that section 715 was not invalid, and now holding that section 716 is not invalid, the two rulings together answer in the negative the question propounded by the Court of Appeals. *All the Justices concur.*