## SMITH *v.* THE STATE.

1. Section one of the act approved August 13, 1910 (Acts 1910, p. 137), provides: "That from and after the passage of this act, any person who shall obtain food, lodging, or other accommodation at any hotel, inn, boarding-house, or eating-house in the State of Georgia, except when credit is given therefor by express agreement, with intent to defraud the owner or keeper of the same, shall be guilty of a misdemeanor, and shall be fined a sum not exceeding two hundred ($200.00) dollars or imprisonment for a period of time not exceeding three (3) months, either or both, in the discretion of the court." Section two of the same act provides: "That proof that food, lodging, or other accommodation was obtained by false pretense or by false or fictitious show or pretense of any baggage or other property by such person obtaining such food, lodging, or other accommodation; or that such person absconded without paying or offering to pay for such food, lodging, or other accommodation; or that such person gave in payment for such food, lodging, or other accommodation any check or draft made payable at sight, on demand, or on a date not subsequent to the date when the same is drawn, on which check or draft payment was refused on presentation; or that such person surreptitiously removed or attempted to remove his baggage or other property brought with him to such hotel, inn, boarding-house, or eating-house therefrom without having paid for or having offered to pay for such food, lodging, or other accommodation so furnished him, shall be prima facie evidence of the fraudulent intent mentioned in section one of this act. Provided, that no person shall be convicted under the provisions of this act where there has been an agreement to delay payment for such food, lodging, or other accommodations until a date after such person terminates his relation as guest at such hotel, inn, boarding-house or eating-house." *Held:* (a) Section one is to be construed as denouncing fraudulent practices of the character therein specified, upon the part of persons received as guests at hotels, inns, boarding-houses, or eating-houses, and as providing for the punishment of persons practicing such frauds. Section two merely states a rule of evidence. Considered in

its entirety, the act is not designed for punishment for mere non-payment of debts. (b) So construed, the act does not violate article 1,. section 1, paragraph 21, of the constitution of this State, which prohibits imprisonment for debt.

2. The second section (quoted above) of the act of 1910, prescribing a rule of evidence applicable on the trial of all cases for offenses committed in violation of the provisions of the first section of the act, is not repugnant to article 1, section 1, paragraph 2, of the State constitution, which declares that protection of person and property shall be impartial and complete.

3. The act of 1910 (supra), considered in its entirety, is not violative of the 14th amendment to the constitution of the United States.

MARCH 10, 1914.

Constitutional question; from Court of Appeals (5317).

The Court of Appeals certified the following question to the Supreme Court for decision: "Is the act of the General Assembly of Georgia, 'making it a misdemeanor to obtain food, lodging, or other accommodations at any hotel, inn, boarding-house or eating-house in this State, with intent to defraud the owner or keeper of the same,' approved August 13, 1910 (Acts 1910, p. 137), unconstitutional and void for any of the following reasons: (a) Does such act violate article 1, section 1, paragraph 21, of the constitution of this State, prohibiting imprisonment for debt? (b) Is section two of said act repugnant to article 1, section 1, paragraph 2, of the constitution of this State, providing that 'protection to person and property is the paramount duty of government, and shall be impartial and complete'? (c) Is said act violative of the 14th amendment to the constitution of the United States?"

The body of the act of 1910, just referred to, declares:

"Section 1. Be it enacted by the General Assembly of the State of Georgia, and it is hereby enacted by authority of the same, that from and after the passage of this act, any person who shall obtain food, lodging, or other accommodation at any hotel, inn, boarding-house, or eating-house in the State of Georgia, except when credit is given therefor by express agreement, with intent to defraud the owner or keeper of the same, shall be guilty of a misdemeanor, and shall be fined a sum not exceeding two hundred ($200.00) dollars, or imprisonment for a period of time not exceeding three (3) months, either or both, in the discretion of the court.

"Sec. 2. Be it further enacted by the authority aforesaid, that proof that food, lodging, or other accommodation was obtained

by false pretense or by false or fictitious show or pretense of any baggage or other property by such person obtaining such food, lodging, or other accommodation; or that such person absconded without paying or offering to pay for such food, lodging, or other accommodation; or that such person gave in payment for such food, lodging, or other accommodation any check or draft made payable at sight, on demand, or on a date not subsequent to the date when the same is drawn, on which check or draft payment was refused on presentation; or that such person surreptitiously removed or attempted to remove his baggage or other property brought with him to such hotel, inn, boarding-house, or eating-house therefrom without having paid for or having offered to pay for such food, lodging, or other accommodation so furnished him, shall be prima facie evidence of the fraudulent intent mentioned in section 1 of this act.   Provided, that no person shall be convicted under the provisions of this act where there has been an agreement to delay payment for such food, lodging, or other accommodations until a date after such person terminates his relation as guest at such hotel, inn, boarding-house, or eating-house."

Section three makes it the duty of the keepers of hotels and other hostelries, as mentioned in section 1, to keep a copy of the act, printed in distinct type, posted in the lobby or public waiting-room of that portion of his establishment most frequented by the guests; and further declares that no conviction shall be had under the act until it be made to appear that a copy of the act was posted as above indicated.   Section four repeals conflicting laws.

*Payton & Nottingham,* for plaintiff in error.

*James H. Price, solicitor,* contra.

ATKINSON, J.   1.   The constitution of this State declares: "There shall be no imprisonment for debt."   Civil Code, § 6377. The question propounded by the Court of Appeals is whether the act above set forth violates this provision of the constitution.   In *Wilson* v. *State,* 138 *Ga.* 489 (75 S. E. 619), one question was whether the act approved August 15, 1903 (Acts 1903, p. 90), was violative of the 13th amendment to the Federal constitution against involuntary servitude except as punishment for crime.   Section 1 of the act there involved was: "If any person shall contract with another to perform for him services of any kind, with intent to procure money or other thing of value thereby, and not to perform the

service contracted for, to the loss and damage of the hirer, or, after having so contracted, shall procure from the hirer money, or other thing of value, with intent not to perform such service, to the loss and damage of the hirer, he shall be deemed a common cheat and· swindler, and upon conviction shall be punished as for a misdemeanor." Section 2 was: "Satisfactory proof of the contract, the procuring thereon of money or other thing of value, the failure to perform the services so contracted for, or failure to return the money so advanced with interest thereon at the time said labor was to be performed, without good and sufficient cause, and loss or damage to the hirer, shall be deemed presumptive evidence of the intent referred to in the preceding section." It was held, that section 1 "is to be construed as denouncing as fraudulent practices of the character therein described, and providing for the punishment of persons violating its terms, the legislative purpose being, not to punish for a mere failure to comply with the obligation, but for the procurement of money or other thing of value with the fraudulent intent not to perform the service;" and that "section two is merely a rule of evidence." Upon such construction it was further held that the statute was not violative of the 13th amendment to the Federal constitution. In the course of the opinion it was said (page 491): "It has uniformly been held that the offense therein [section 1] declared, was not for failure to perform service or pay debts, but was for fraudulently procuring money, or other thing of value; that the fraudulent conduct of the defendant was the gist of the crime, not merely his failure to perform his contract." The statute involved in that case is similar to the act of 1910, above set forth, and the reasoning as contained in the decision is peculiarly applicable to the question now under consideration. Section 1 of the act of 1910 defines the crime, while section two merely states a rule of evidence. Considered in its entirety, the act is designed for the punishment of fraudulent practices in the matter of obtaining board, lodging, or other accommodations at hotels, inns, boarding-houses, or eating-houses, and not for mere non-payment of debts. So construed, that act does not violate the provision of the State constitution against imprisonment for debt. See also *Lamar* v. *State*, 120 *Ga.* 312 (47 S. E. 958); Clark *v.* State, 171 Ind. 104 (84 N. E. 984, 16 Ann. Cas. 1229, and cases cited in note).

2.   Further instructions are requested as to whether the second section of the act of 1910 (supra) is violative of article 1, section 1, paragraph 2, of the constitution of this State (Civil Code, § 6358), which declares that "protection to person and property is the paramount duty of government, and shall be impartial and complete." Section two of the act (as in effect does section two of the act of 1903, under consideration in the case of *Wilson* v. *State,* supra) declares that proof of specified acts upon the part of a defendant accused of violating the provisions of the act should be prima facie evidence of "fraudulent intent." In the case cited it was pointed out in the opinion that the legislative provision was not purely arbitrary, but that there was a rational relation between the facts specified to be proved and the fact of fraudulent intent, and that in this State a prisoner has the right to make a statement in his own defense, not under oath; and it was held that section two of the act was not invalid. See also *Banks* v. *State,* 124 *Ga.* 15 (52 S. E. 74, 2 L. R. A. (N. S.) 1007). A similar clause in a statute was under consideration In Re Milecke, 52 Wash. 312 (100 Pac. 743, 21 L. R. A. (N. S.) 259, 132 Am. St. R. 968), which was held broadly not to be violative of any constitutional provision. In the course of the opinion it was said: "Nor do we think that that part of section 2 of the act, providing that if it be shown that a party has refused or neglected to pay for his accommodations, or has removed or surreptitiously attempts to remove his baggage, such showing shall be prima facie evidence of guilt, does violence to any constitutional provision. It is elementary that, when a crime is defined, the legislature may provide the quantum as well as the proof. It is not going beyond sound reason to say that when a person asks for and receives accommodations at a hotel, for which he does not pay, or if he undertakes to destroy the innkeeper's lien on his baggage, he should assume the burden of showing an honest intent." Under the principles of the cases cited above, the legislature, by enacting the hotel act of 1910, now under consideration, prescribed a reasonable classification of subject-matters to which the act should be applicable, and by section two pronounced a legitimate rule of evidence, applicable in cases of prosecution for violation of the act. The law is operative throughout the State, and equally applicable to all persons coming within its scope. It does not in any sense violate the provision of the State con-

stitution which declares for impartial and complete protection of person and property.

3. The remaining question propounded by the Court of Appeals is whether the entire act of 1910 (supra) is not violative of the 14th amendment to the constitution of the United States. The amendment defines who are citizens of the United States and of the State wherein they reside, and declares: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." It is not suggested wherein it is contended that the act is violative of this provision of the constitution. The amendment contains several clauses relating to distinct rights of citizens as against State legislation, which, stated in the reverse order, may be called (a) the equal-protection clause; (b) the due-process clause; (c) the clause against abridgment of privileges or immunities. The equal-protection clause is in effect comprehended by the clause of the State constitution, which declares that protection of person and property shall be impartial and complete. The ruling on that subject announced in the preceding division of this opinion renders it unnecessary to deal with it further under the Federal constitution. The reasoning set forth in that division of the opinion also enters largely into a proper decision on the subject of due process of law. If the act of 1910, under consideration, could be said to deny due process of law, it would be on account of the 2d section, declaring that specified acts would constitute "prima facie" evidence of fraudulent intent. In the case of Bailey v. State of Alabama, 219 U. S. 219 (31 Sup. Ct. 145, 55 L. ed. 191), it was said: "While States may, without denying due process of law, enact that proof of one act shall be prima facie evidence of the main fact in issue, the inference must not be purely arbitrary; there must be rational relation between the two facts, and the accused must have proper opportunity to submit all the facts bearing on the issue." In *Wilson* v. *State,* supra, in considering a similar provision of a statute, it was held in effect that there was a rational relation between the facts to be proved and the fact to be presumed, and the provision of the statute did not shut out from the accused opportunity to submit all facts bearing on the

issue.   While the question of violating the due-process clause of the constitution was not directly made in the *Wilson* case, the principles announced were applicable to such a case, and are controlling in the present.   A casual reading of the statute will disclose that section 2 did not provide an arbitrary rule, but that there was reasonable relation between the facts to be proved and those to be presumed.   Should it be questioned that there was a reasonable relation between the facts, sufficient is said in the excerpt from In Re Milecke (supra) to remove the doubt.   A prisoner is allowed to make his statement and introduce evidence in prosecutions under this statute, as in all other criminal cases.   It is plain that the statute does not deny due process of law.

Owing to the character of the several businesses classified in the first section of the act, they constitute fruitful objects for fraudulent impositions.   The statute specifies certain acts of a character naturally tending to deceive, which persons designing fraud might do, and denounces and penalizes them.   The statute is a valid State law.   There is no inherent right to commit fraud.   The provision of the 14th amendment against abridgment of privileges and immunities was not intended to prevent a State from adopting laws for the suppression and punishment of frauds.   It does not appear from any view-point that the act of 1910 (supra) violates the 14th amendment.   In the light of the foregoing rulings the questions propounded are answered in the negative.

*All the Justices concur.*