### GRIFFIN *v.* THE STATE.

1. Properly construed, Penal Code (1910) § 204, which provides for raising a presumption of fraud against the president and directors of an insolvent bank chartered in this State, is not violative of the fourteenth amendment of the constitution of the United States on the ground that it abridges the privileges and immunities of citizens of the United States, or deprives the president and directors of an insolvent bank of the equal protection of the laws, or deprives them of life, liberty, or property, without due process of law, on the ground that similar provisions have not been made in regard to the president and directors of other corporations than banks.

(*a*) That section is not violative of the fourteenth amendment of the constitution of the United States for any of the reasons set out in the first question by the Court of Appeals.

2. The fifth amendment of the constitution of the United States is not a limitation upon the power of the States, but operates upon the national government only. Accordingly section 204 of the Penal Code is not invalid as being violative of that amendment.

3. Penal Code (1910) § 204 is not violative of article 1, section 1, paragraph 3, of the State constitution, which declares that "no person shall be deprived of life, liberty, or property, except by due process of law."

4. Within the meaning of Penal Code (1910) § 204, the insolvency of a bank is that condition in which its entire property and assets are insufficient to pay all of its debts.

(a) If the entire property and assets of a bank are sufficient to discharge its liabilities, it is not insolvent within the meaning of Penal Code (1910) § 204, although it may not be able to pay its debts immediately as they become due, or to pay its depositors on demand.

(b) Civil Code (1910) § 2306, which provides for the winding up of a bank by the State bank examiner under certain circumstances therein declared, does not furnish a definition of insolvency to be applied in construing Penal Code (1910) § 204.

NOVEMBER 11, 1914.

The Court of Appeals certified to the Supreme Court the following questions (Case No. 5379):

"1. Is section 204 of the Penal Code of Georgia of 1910 violative of the provisions of the fourteenth amendment of the constitution of the United States, that 'No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws;' for the reason that the provision of this section of the code that every insolvency of a chartered bank shall be deemed fraudulent, and the president and directors shall be severally punished by imprisonment and labor in the penitentiary, abridges the privileges and immunities of citizens of the United States, or deprives the president and directors of such a bank of equal protection of the laws with like officers of other corporations, as to whom there is no law providing that insolvency of the corporation shall be deemed fraudulent, and that the president and directors, or other officers, shall be severally punishable by imprisonment and labor in the penitentiary on proof of insolvency of the corporation; or for the reason that this provision of the code destroys or abridges the presumption of innocence which the law raises as evidence in behalf of every one charged with crime; or for the reason that it deprives the president and directors of an insolvent chartered bank of the right of presenting

their defense to the charge of fraudulent intent, especially since, under the law of this State, the defendant is deprived of the right of testifying in his own behalf; or for the reason that this section of the code declares insolvency of a chartered bank to be fraudulent and provides that the president and directors of the bank shall be punished, even though they had nothing to do with the management of the bank and though the insolvency was not brought about by their conduct or with their knowledge; or for any other reason suggested by the defendant's demurrer?

"2.   Is section 204 of the Penal Code, for any of the reasons stated in the foregoing question, violative of the provision of the fifth amendment of the constitution of the United States, that 'No person shall . . be deprived of life, liberty, or property, without due process of law'?

"3.   Is section 204 of the Penal Code, for any of the reasons stated above violative of the provision of article 1, section 1, paragraph 3, of the constitution of the State of Georgia, that 'No person shall be deprived of life, liberty, or property, except by due process of law'?

"4.   Is a bank insolvent, within the meaning of section 204 of the Penal Code, if the entire property and assets of the bank are sufficient to discharge its liabilities by process of liquidation, even though it may not be able to pay its debts immediately as they become due, or to pay its depositors on demand? In what respect, if any, is the meaning of the term 'insolvency,' as applied to a chartered bank, differentiated from the meaning of that term as applied to the financial condition of an individual? Are sections 2306 of the Civil Code and 204 of the Penal Code to be construed together, and is the test of insolvency indicated in the former section to be applied in construing the latter?"

The Penal Code (1910) § 204, to which reference is made in the preceding questions, reads as follows: "Every insolvency of a chartered bank, or refusal or failure to redeem its bills on demand, either with specie or current bank-bills passing at par value, shall be deemed fraudulent, and the president and directors shall be severally punished by imprisonment and labor in the penitentiary for not less than one year nor longer than ten years: Provided, that the defendant may repel the presumption of fraud, by showing that the affairs of the bank have been fairly and legally administered,

and generally with the same care and diligence that agents, receiving a commission for their services, are required and bound by law to observe; and upon such showing the jury shall acquit the prisoner."

*Holden & Shackelford; Hamilton McWhorter, George C. Thomas, W. W. Armistead,* and *T. J. Shackelford,* for plaintiff in error.

*John B. Gamble, solicitor-general,* and *Cobb & Erwin,* contra.

LUMPKIN, J. 1. With certain limitations, the legislature may enact that when specified facts have been proved, they shall, even in a criminal case, be prima facie evidence of the guilt of the accused, and shift the burden of proof. On this power there are limitations, the principal one of which is that the fact or facts which will raise the presumption and shift the burden of proof must have some fair relation to, or material connection with, the main fact as to which the presumption is raised. The inference or presumption from the facts proved must not be merely arbitrary, or wholly unreasonable, unnatural, or extraordinary, but must bear some reasonable relation to the facts proved. To illustrate, if the legislature should declare that every man found wearing a straw hat in September should be presumed to have committed any forgery which took place in that month, such an act would be invalid, because there is no rational connection between forgery and wearing a straw hat, and the presumption would be purely arbitrary. But if the legislature should declare that one found in possession of stolen goods shortly after a larceny should be prima facie presumed to be the thief, and that the burden of rebutting the presumption should rest on him, this would be valid, the presumption not being purely arbitrary but there being a reasonable connection between the possession of the stolen goods and the commission of the larceny. Moreover, the presumption so raised must not be final, but the accused must be allowed a fair opportunity to make his defense and show all of the facts bearing on the issue, and to have the whole case submitted to the jury for decision, after considering all of the evidence as well as the prima facie presumption, if the facts from which it arises have been proved to exist. *Banks* v. *State,* 124 *Ga.* 15 (52 S. E. 74, 2 L. R. A. (N. S.) 1007, and note); *Vance* v. *State,* 128 *Ga.* 661 (57 S. E. 889); *Wilson* v. *State,* 138 *Ga.* 489, 493 (75 S. E. 619); 2 Jones, Ev. § 196; Mobile &c. R. Co. *v.* Turnipseed, 219 U. S. 35 (31 Sup. Ct. 136, 55 L. ed. 78, 32 L. R. A. (N. S.) 226, 22 Ann. Cas. (1912A) 463, and note); State *v.* Thomas, 6 Ann.

Cas. 744, 746, and note (144 Ala. 77, 40 So. 271, 2 L. R. A. (N. S.) 1011, 113 Am. St. R. 17) ; 3 Enc. Ev. 291; 14 Id. 110.

The exercise of this power by the legislature in relation to chartered banks, so as to raise a prima facie presumption of fraud against the president and directors, upon proof of the insolvency of the bank, is not violative of the fourteenth amendment of the constitution of the United States on the ground that it deals with chartered banks and not with other corporations. Legitimate classification in such cases does not deprive persons within the class of the equal protection of the laws. If banks can not be legitimately classified without including all other corporations in the legislation applicable to them, then all the banking laws of the country, National and State, would have to be declared invalid.

If the business of banking furnishes a legitimate basis for classification in many respects, is the presumption raised by Penal Code (1910) § 204 an arbitrary presumption, without legitimate basis? That section does not provide punishment for mere insolvency, but contemplates fraudulent insolvency of banks. The president and directors have duties to discharge in regard to the management of the bank and its affairs. The causes which bring about the insolvency of a bank are much more within the knowledge of its managing officials than of persons not connected with it. To impose on the State, in a prosecution for a fraudulent insolvency, the onus of proving all of the transactions of the bank and the acts of its officials, would place upon it a heavy burden. It is much easier for the managing officials of the bank to show that the insolvency was not fraudulent, but arose from other causes. The facts are peculiarly accessible to them, if they properly discharge their duties. The suggestion that the president and directors frequently take little or no part in managing a bank can have but little weight. It is the duty of directors to direct, though they may commit certain ministerial duties to authorized officers. We have recently had occasion, in regard to trading corporations generally, to declare that while such directors may commit the active management of the business to authorized officers, this will not relieve them from the duty of reasonable supervision, and it was said: "Unfortunately some directors appear to think that they have fully discharged their duties by acting as figureheads and dummies." *McEwen* v. *Kelly,* 140 *Ga.* 720 (79 S. E. 777). It is not meant that carelessness will

necessarily import guilt; but duties rest upon the president and directors of a chartered bank, in regard to the management of its affairs, which furnish a legitimate basis for a legislative act raising a presumption that they have been guilty of fraudulent mismanagement when the bank becomes insolvent.

Giving the statute a reasonable construction, the presumption was not intended to be conclusive. The argument that the expression "shall be deemed fraudulent" meant that it should be finally adjudged fraudulent is unsound. The latter part of the section provides for repelling "the presumption of fraud;" and the fair construction of the entire section is that the presumption raised is only prima facie, and subject to be rebutted. The raising of such a presumption upon proof of the fact that the bank was one chartered in this State, that the defendant was its president or a director, and that it had become insolvent, is not so arbitrary or irrational that it can be declared that the legislature had no legitimate foundation upon which to rest the presumption or to provide for a change in the burden of proof. Properly construed, the section does not authorize the punishment of the president and directors "even though they had nothing to do with the management of the bank and though the insolvency was not brought about by their conduct, or with their knowledge." The affirmative declaration that the defendant may repel the presumption of fraud, by showing that the affairs of the bank have been fairly and legally administered, and generally with the same care and diligence that agents, receiving a commission for their services, are required and bound by law to observe, and that upon such showing "the jury shall acquit the prisoner," does not exclude the president or a director of a chartered bank which has become insolvent from disproving, by any legitimate evidence, the presumption of fraudulent mismanagement which may have been raised against him. The fact that in this State the defendant can not testify, but may make his statement not under oath, which the jury may believe in preference to the sworn evidence, does not render the act invalid, as held in the cases of *Vance* v. *State,* and *Wilson* v. *State,* supra.

We think that a fair and reasonable construction of the section of the Penal Code under consideration is, that, upon proof of certain specified facts, a presumption of fraudulent mismanagement would be raised against the president and directors of an insolvent

41

chartered bank; that if such management as is mentioned in the proviso should be shown, the jury would be required to acquit the prisoner or prisoners; but that this would not prevent the accused from rebutting the presumption by proof of other facts, such as that the insolvency was caused by an unexpected panic in the country, or by the speculation of some officer or agent, for which the accused was in no way responsible, or by other evidence rebutting the presumption of fraudulent conduct on his part. See, in this connection, *Youmans* v. *State,* 7 *Ga. App.* 101 (66 S. E. 383); Robertson *v.* People, 20 Colo. 279 (38 Pac. 326); Meadowcroft *v.* People, 163 Ill. 56, 67 (45 N. E. 303, 991, 35 L. R. A. 176, 54 Am. St. R. 447); State *v.* Beach, 147 Ind. 74, 78 (43 N. E. 949, 46 N. E. 145, 36 L. R. A. 179); State *v.* Sattley, 131 Mo. 464 (33 S. W. 41).

It follows from what has been said, that the prima facie presumption raised against the president and directors of a chartered bank, upon proof of its insolvency, that they have been guilty of fraudulent mismanagement, is not arbitrary, unreasonable, unnatural, or extraordinary, and that the code section under consideration does not attempt to deprive those officers of the right to be heard on the existence of the fact in issue, or their connection therewith, or to rebut the presumption against them by any legitimate evidence. So construed, the act is not unconstitutional for any of the reasons mentioned in the first question propounded by the Court of Appeals; and that question is answered in the negative.

2. It is well settled that the fifth amendment of the constitution of the United States is not a limitation upon the powers of the States, but operates on the national government only. *Wilburn* v. *State,* 141 *Ga.* 510 (2b), and citations (81 S. E. 444). Accordingly, Penal Code (1910) § 204 is not unconstitutional as being violative of that amendment.

3. What has already been said in the first division of this opinion in regard to the fourteenth amendment of the constitution of the United States applies also to the provision of the State constitution that "No person shall be deprived of life, liberty, or property, except by due process of law;" and section 204 of the Penal Code is not violative of that clause of the constitution.

4. · The authorities are not in accord in defining insolvency. The underlying idea involved is an inability to pay debts. The general and popular meaning of the word is that condition in which a per-

son has not sufficient assets to pay his debts. *Cohen* v. *Parish,* 100 *Ga.* 335 (28 S. E. 122). In connection with bankruptcy and insolvency acts another definition has arisen as applicable to traders, which is the inability of a person to pay his debts as they become due in the ordinary course of business. And, as a bank was engaged in a business of a certain character, this definition came to be applied to the insolvency of banks. *Clarke* v. *Ingram,* 107 *Ga.* 565, 582 (33 S. E. 802) ; Black's Law Dic., Anderson's Law Dic., Bouvier's Law Dic., word "Insolvency;" 4 Words and Phrases, 3647, 3648, 3654. Nevertheless, as general deposits were held to be loans to the bank, payable on demand, and it was a matter of common knowledge that the business of banking involved lending out a large part of these deposits, and not merely holding them ready to pay every depositor if he should make demand therefor, various modifying expressions have been employed, to show that while a bank is ordinarily expected to pay depositors on demand in the usual course of business, sudden panics or emergencies may arise which would cause a temporary suspension of payments without conclusively showing insolvency. Thus one writer says that a number of courts now uphold what he declares to be the more reasonable rule that "a bank is solvent when it possesses sufficient solvent and marketable assets to.meet all of its obligations within a reasonable time." Magee on Banks and Banking, 604. This definition has the defect of using the word "solvent" as a part of the definition of the same word. For other efforts to formulate a satisfactory definition of insolvency as applied to banks, see Tiffany, Banks and Banking, 346; Michie, Banks and Banking, § 73, p. 496; Zane, Banks and Banking, 603, 604; 5 Cyc. 559, 560.

We are not now concerned, however, with announcing a precise definition of insolvency as applied to banks, relatively to bankruptcy or insolvency laws; but are endeavoring to show that two meanings have been given to the word insolvency, and to determine which of them was intended in the act now being considered. The two meanings of the word insolvency were thus stated by Mr. Justice Field, in Toof *v.* Martin, 80 U. S. 46, 47 (20 L. ed. 482) : "The term insolvency is not always used in the same sense. It is sometimes used to denote the insufficiency of the entire property and assets of an individual to pay his debts. This is its general and popular meaning. But it is also used in a more restricted sense, to

express the inability of a party to pay his debts as they become due in the ordinary course of business. It is in this latter sense that the term is used when traders and merchants are said to be insolvent, and as applied to them it is the sense intended by the act of Congress." The act of Congress mentioned was the bankrupt act of 1867. The bankrupt act of 1898 expressly defines the word as there used, and makes the definition conform closely to what has been declared to be the general and popular meaning. In determining whether the word is to be construed as having one meaning or the other, as employed in the Penal Code, § 204, there are several considerations which may aid us. In construing statutes the general rule is that the ordinary signification is to be applied to words, except words of art or those connected with a particular trade or subject-matter, unless there is something in the context to show that the legislature intended to use the word in a different sense. Civil Code (1910), § 4. Again, bankruptcy and insolvency laws are civil laws dealing with civil proceedings in certain cases, and looking to the protection of the creditors, and the taking charge and properly handling and distributing of estates of persons within their scope, the bankrupt law also providing for the discharge of the debtor. Such laws are to be construed in the light of their purpose and object. On the other hand, the law now before us is a penal law which may subject the president and directors of a bank to imprisonment in the penitentiary, upon conviction; and it raises a presumption of guilt from the insolvency of the bank. The rule of strict construction is usually applicable in criminal law. This act was a part of the Penal Code of 1833, and has been in force ever since. The legislature declared that "every insolvency of a chartered bank, or refusal or failure to redeem its bills on demand, either with specie or current bank-bills passing at par value, shall be deemed fraudulent," etc. This created two contingencies, either one of which would serve to raise a presumption of fraud; one was insolvency, the other failure or refusal of a bank of issue to redeem its bills. Insolvency under the act was not the same as failure or refusal to redeem. It was used in the ordinary and general sense of the word.

Several States have statutes which make it penal for the officers of a bank knowingly to receive deposits when the bank is insolvent or in failing circumstances. In 37 Central Law Journal, 147, a

writer discussed the meaning of the word "insolvent" as used in such a statute, and criticised a decision which had been rendered by the Supreme Court of Iowa. Among other things it was said: "While the foregoing are undoubtedly the popular and general meanings of solvency and insolvency, the courts, in administering the bankruptcy and insolvency laws and laws regulating assignments for the benefit of creditors, have given the words limited and restricted meanings. Under those acts insolvency means inability to pay one's debts in the ordinary course of business. Also under insolvent acts where it was necessary to protect the creditors and compel an equal distribution of the insolvent's estate. The main purpose of the bankrupt act was to compel a debtor to distribute his property equitably among all his creditors. . . By the terms of the act [the bankrupt act of 1867] the creditor could not procure a preference if he knew of the failure of his debtor to meet obligations when due. The rule was applied particularly to traders, merchants, and bankers. And this limited meaning of 'insolvency' was first applied under the bankrupt act, and for the above reason and no other. By what line of reasoning, then, can the restricted meaning be applied to the word when used in the penal statutes under discussion? Clearly no purpose is intended to be served by these statutes kindred to the purpose of the bankrupt acts. The objects of the two are entirely dissimilar. The penal statutes are supposed to prevent fraudulent banking. They are not intended to force all banks to keep all deposits in the vault ready for the depositor upon call. Statutes regulating banking expressly permit the loaning of deposits by requiring the bank to keep on hand a reserve of only 15 to 20 per cent. of their deposits. Does the legislature permit banks to loan 80 to 90 per cent. of deposits, and at the same time fix a heavy penalty for not always' having the same money on hand to pay out on demand?" This line of reasoning has been followed in some cases. Ellis v. State, 138 Wis. 513 (119 N. W. 1110, 20 L. R. A. (N. S.) 444, 131 Am. St. R. 1022); Fleming v. State, 62 Tex. Crim. App. 653 (139 S. W. 598). In Parrish v. Commonwealth, 136 Ky. 77 (123 S. W. 339), the same definition was adopted in a criminal case; but the majority of the court held, that, under a statute declaring that a reversal should only be granted for errors of law where the court was satisfied that the substantial rights of the defendant had been violated, the difference in the two

definitions was not so material as to require a reversal, in view of the evidence and argument. Hobson, J., dissented from this position. See also, in this connection, *Youmans* v. *State, 7 Ga. App.* 101, supra. In State *v.* Stevens, 16 S. D. 309 (92 N. W. 420), the definition of insolvency applicable to bankruptcy or insolvency proceedings was adopted. In California the same insolvency act was held to include both meanings of the word, according as the proceeding was voluntary or involuntary. Ruggles *v.* Cannedy, 127 Cal. 290, 53 Pac. 911, 916, 46 L. R. A. 371. We are not now discussing whether a failure or refusal to pay on demand might be proved as having evidential value on the subject of insolvency.

Civil Code (1910) section 2306 does not furnish a test of insolvency as that word is used in Penal Code section 204. The section first cited forms a part of the law relating to the bank bureau, enacted in 1907. It provides for a preliminary report of insolvency by the bank examiner, derived from certain data, a seizure of the bank's assets under order of the Governor, and a thorough examination into its affairs; and that whenever the examiner shall "become satisfied that such bank can not resume business or liquidate its indebtedness to the satisfaction of all creditors, including its shareholders, he shall report the fact of its insolvency to the Governor," who shall thereupon instruct the attorney-general to institute proper proceedings. It is evident that the language of this section can not be literally imported into section 204 of the Penal Code. The two examinations, and the becoming satisfied that the bank "can not resume business or liquidate its indebtedness to the satisfaction of all creditors, including its shareholders," do not furnish a test of insolvency under the criminal statute. The one is a remedial proceeding by the State for the winding up of a bank under certain circumstances and in a specified manner. The other is a penal law for the punishment of fraudulent mismanagement by a president or directors in connection with the insolvency of a chartered bank.

It follows from what has been said, that, within the meaning of Penal Code (1910) § 204, a bank is not insolvent if its entire property and assets are sufficient to discharge its liabilities by process of liquidation, even though it may not be able to pay its debts immediately as they become due, or to pay its depositors on demand; and that in this statute there is no difference in the meaning of the

word "insolvency" as applied to a chartered bank and the meaning of the word as applied to the financial condition of an individual. Of course, we understand the process of liquidation mentioned in the question of the Court of Appeals to mean prompt liquidation duly carried out, and not after indefinite holding with the hope of appreciation in values.                      *All the Justices concur.*