### STATE v. HEZEKIAH GRIFFIN.

(Filed 22 February, 1911.)

**1. Legislature—Contracts—Promise to Work—Advances—Intent— Fraud.**

To convict under Revisal, sec. 3431, for obtaining money upon and by color of any promise to begin any work and unlawfully and willfully failing to commence or complete the work according to the contract, without lawful excuse, it is necessary to show the fraudulent intent on the part of the promisor; and merely the facts of obtaining the advances, the promise to do the work, and a breach of that promise, are insufficient to sustain a conviction.

**2. Same—Rational Connection.**

For a presumption from the evidence, created by a legislative enactment, to be valid there must be some rational connection between the fact proved and the ultimate fact presumed, and the inference of one fact from proof of another fact shall not be so unreasonable as to be a purely arbitrary mandate. U. S. Constitution, Fourteenth Amendment.

**3. Same—"Due Process"—Imprisonment for Debt—Peonage.**

In order for a conviction under Revisal, sec. 3431, it is necessary to show a contemporaneous fraudulent intent and purpose to obtain money under a promise to commence and complete certain work.

**4. Same—Interpretation of Statutes—Constitutional Law.**

A statute which makes the mere failure to do the work or perform the contract presumptive evidence of fraudulent intent, upon which a person may be convicted and imprisoned, is violative of the Thirteenth Amendment to the Federal Constitution, and is in conflict with our own State Constitution prohibiting imprisonment for debt except in case of fraud.

APPEAL by defendant from *W. J. Adams, J.,* at August Term, 1909, of UNION.

Indictment under Revisal, sec. 2431. The defendant was convicted and sentenced to thirty days on the roads and to pay the costs. From this judgment he appeals to the Supreme Court.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Brown.*

*Attorney-General and George L. Jones for State.*
*Williams, Lemmond & Love for defendant.*    .

BROWN, J. The offense of which the defendant was convicted is defined by the statute as follows: "If any person with intent to cheat and defraud another shall obtain any money, etc., from any other person or corporation, upon and by color of any promise or agreement that the person making the same will begin any work, etc., and shall unlawfully and willfully fail to commence or complete said work according to the contract, without a lawful excuse, he shall be guilty of a misdemeanor," etc. This statute was under consideration by this Court in *S. v. Norman,* 110 N. C., 488. In that case the trial judge charged the jury as follows: "In order to convict, the State must show to the full satisfaction of the jury something more than obtaining the advances, a promise to work to pay for the same, and a breach of that promise. Nothing else being shown, these facts would constitute only a breach of contract, and for this the defendant could not be prosecuted criminally. The jury must be fully satisfied of an element of fraud in this transaction. If the jury believe, from the evidence, that the defendant obtained these advances and promised to commence work on Monday morning to pay therefor, and at the time he obtained the advances and made the promise intended to keep his word and commence work, and afterwards, being attracted by higher wages, or for other cause, failed to do so, he would not be guilty. But if the jury are fully satisfied that at the time he obtained the advances and made the promise (if he did

make it) the defendant did not intend to commence work, but used the promise as an artifice or fraud for the sole purpose of obtaining the advancements, then he would be guilty. The jury must be satisfied that the defendant's object and purpose was to cheat and defraud."

This construction of the statute was adopted by this Court in the words quoted, and the Court further said: "Certainly, evidence merely of the agreement to work and obtaining advances thereon and the failure to comply would not warrant or support a verdict." It is manifest from the record in this case that there is no evidence whatever that when the defendant obtained the advances in money he then intended to defraud the prosecutor, that he then had no intention of performing his contract, and used the promise to work as a fraudulent device to obtain the credit. The defendant was a tenant of the prosecutor, and lived with his wife and children on prosecutor's land. He was convicted of assault and battery and prosecutor paid his fine and costs, the defendant agreeing to continue work on the farm and to cut cross-ties at 10 cents each. This was in August, 1908. The defendant worked with prosecutor off and on until the last of December. The prosecutor seized his hog, farming tools, flour and meat for his debt, although he had no mortgage on them. The defendant moved off his land in order, as defendant testifies, to support his family.

But it is contended that the statute has been amended since the opinion in the *Norman case,* and that the mere fact of a failure to do the work raises a presumption of fraud, and that the original promise was a subterfuge and device to obtain the advances.

The statute was amended in 1905, since that decision, and the amendment reads as follows: "And evidence of such promise or agreement to work, the obtaining of such advances thereon and the failure to comply with such promise or agreement shall be presumptive evidence of the intent to cheat and defraud at the time of obtaining such advances and making such promise or agreement, subject to be rebutted by other testimony which may be introduced by the defendant."

The question was not discussed in the briefs or at the bar, but we must take notice of the inherent defect of this attempted rule of evidence.

The Supreme Court of the United States has frequently recognized the general power of the State Legislature to prescribe the evidence which shall be received and the effect of that evidence in its own courts. *Fong Que Ting v. U. S.,* 149 U. S., 749. But there is one element absolutely essential to the validity of a legislative presumption in order that it may not ·be obnoxious to the Fourteenth Amendment, the "due process" clause of the Federal Constitution. There must be some *rational connection* between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another fact shall not be so unreasonable as to be a purely arbitrary mandate. *Mobile R. R. v. Turnipseed,* Supreme Court of U. S., 19 December, 1910.

It is a part of the organic law of this State that there shall be no imprisonment for debt except in case of fraud. The bald fact that a person contracted a debt and promised to pay it in work, standing alone, does not justify a presumption of fraud in contracting the original debt, any more than it would if he had promised to pay it in money. It is beyond the power of the Legislature to create such a rule of evidence and enforce it in the State's own courts. It is but an arbitrary mandate, there being no rational connection, tending to prove fraud, between the fact proved and the ultimate fact presumed. Such an arbitrary rule of evidence takes away from the defendant his constitutional rights and interferes with his guaranteed equality before the law, and, as the Supreme Court of the United States says, "violates those fundamental rights and immutable principles of justice which are embraced within the conception of due process of law." *Bailey v. State of Alabama,* Supreme Court of United States, 3 January, 1911.

· *Mr. Justice Hughes,* who delivered the opinion of the Court, further says: "It is apparent that a constitutional prohibition cannot be transgressed indirectly by the creation of a statutory presumption any more than it can be violated by direct enactment. The power to create presumptions is not a means of

escape from constitutional restrictions. And the State may not in this way interfere with matters withdrawn from its authority by the Federal Constitution and subject the accused to conviction for conduct which it is powerless to proscribe."

The General Assembly of this State can no more, by the enactment of an arbitrary rule of evidence, violate the provision of our own Constitution than it can the Federal Constitution. In the enactment of the Amendment Act of 1905 it violated both.

The history of this legislation seems to have been almost identical in this State and Alabama. At first the statute construed by this Court in the *Norman case, supra,* was enacted in both States. Convictions could not be easily obtained because of the inability to prove the original fraudulent intent and purpose in obtaining the advances and making the promise. To obviate this, the amendment of 1905 was enacted in both this State and Alabama.

The Supreme Court of the United States has recently declared the Alabama amendment as violative of the Fourteenth Amendment to the Federal Constitution, and concludes its opinion in these words: "What the State may not do directly it may not do indirectly. If it cannot punish the servant as a criminal for the mere failure or refusal to serve without paying his debt, it is not permitted to accomplish the same result by creating a statutory presumption which upon proof of no other fact exposes him to conviction and punishment. Without imputing any actual motive to oppress, we must consider the natural operation of the statute here in question (*Henderson v. Mayor,* 92 U. S., 268), and it is apparent that it furnishes a convenient instrument for the coercion which the Constitution and the act of Congress forbid—an instrument of compulsion peculiarly effective as against the poor and the ignorant, its most likely victims. There is no more important concern than to safeguard the freedom of labor, upon which alone can enduring prosperity be based. The provisions designed to secure it would soon become a barren form if it were possible to establish a statutory presumption of this sort and

to hold over the heads of laborers the threat of punishment for crime, under the name of fraud, but merely upon evidence of failure to work out their debts. The act of Congress deprives of effect all legislative measures of any State through which directly or indirectly the prohibited thing, to wit, compulsory service to secure the payment of a debt, may be established or maintained; and we conclude that section 4730, as amended, of the Code of Alabama, in so far as it makes the refusal or failure to perform the act or service, without refunding the money or paying for the property received, *prima facie* evidence of the commission of the crime which the section defines, is in conflict with the Thirteenth Amendment and the legislation authorized by that amendment, and is therefore invalid." *Bailey v. Alabama, supra.* As the amendment to our statute is identical with the Alabama law, this decision is binding upon us.

Upon the evidence introduced, ignoring the statutory presumption, his Honor should have instructed the jury, as prayed by the defendant, that the evidence was insufficient to convict.

New trial.