581 P.2d 319

The STATE of Idaho,
Plaintiff-Respondent,

v.

Janella WAGENIUS,
Defendant-Appellant.

The STATE of Idaho,
Plaintiff-Respondent,

v.

Craig S. DeVOE, Defendant-Appellant.

Nos. 11988, 12070.

Supreme Court of Idaho.

June 28, 1978.

Michael J. Verbillis, Coeur d'Alene, for appellant Janella Wagenius.

Jay Sudweeks, of the Idaho Trial Lawyers Ass'n, Twin Falls, amicus curiae.

Wayne L. Kidwell, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for respondent.

Gary E. Lofland, Boise, for appellant Craig S. Devoe.

Jay Sudweeks, of Idaho Trial Lawyers Ass'n, Twin Falls, amicus curiae.

BAKES, Justice.

In this opinion we release our decision in two different appeals: No. 11988, *State v. Wagenius*; and No. 12070, *State v. DeVoe*. These appeals were consolidated because they present similar questions concerning withheld judgments in criminal proceedings.

## I

In *State v. Wagenius*, No. 11988, the defendant appellant Janella Wagenius was originally charged with drawing a check over $25.00 with insufficient funds, a felony. She pleaded not guilty. After the district court set the case for trial, the information was amended to charge Wagenius with a misdemeanor check charge. Wagenius pleaded guilty to the amended information. Following a sentencing hearing, the district judge ordered that judgment and sentence be withheld for a period of two years upon the condition that the defendant be incarcerated in the Kootenai County jail for a period of thirty days and that she not violate any law during that two year period. Wagenius appealed to this Court from the imposition of that sentence. The state has moved to dismiss the appeal on the ground that the district court's order withholding judgment is not an appealable order because it was not a "final judgment."

## II

In *State v. DeVoe*, No. 12070, the defendant appellant Craig DeVoe was charged with fraudulent procurement of food. He was tried by a magistrate sitting without a jury. Following the presentation of evidence, the magistrate found that DeVoe was guilty of the offense charged, but withheld judgment and ordered DeVoe to pay a $75.00 fine and $7.50 court costs and serve two days in jail. The magistrate suspended $25.00 of the fine and one day of the jail sentence on the condition that DeVoe make restitution of $13.18. DeVoe appealed the magistrate's order to the district court. The district court affirmed the magistrate's order and DeVoe appealed to this Court. The issue concerning the appealability of the magistrate's order in No. 12070 was raised for the first time by this Court *sua sponte* at oral argument.

1. This section was repealed in 1977. 1977 Idaho Sess.Laws, ch. 170, § 9. Rules promulgated by this Court presently prescribe the orders from which an appeal may be taken to this Court. *Id.*, § 10 (amending I.C. § 19–2801).

## III

## THE APPEALABILITY OF THE TRIAL COURTS' ORDERS CONDITIONALLY WITHHOLDING JUDGMENT

The initial question presented is whether a defendant who has either pleaded guilty to or been found guilty of committing a crime may appeal as a matter of right from an order withholding judgment but nevertheless imposing criminal sanctions. At the time the appeals were taken, I.C. § 19–2803 (repealed 1977) set forth the district court orders from which a defendant in a criminal action may appeal to this Court as a matter of right. It provided:

"19–2803. APPEAL BY DEFENDANT. —An appeal may be taken by the defendant:

"1. From a final judgment of conviction.

"2. From an order denying a motion for new trial.

"3. From any order made after judgment, affecting the substantial rights of the party. . . ."[1]

These are the same orders from which a defendant before the magistrates division of the district court may appeal to the district court. I.C. § 1–2213; Criminal Appellate Rule 3. The language in Criminal Appellate Rule 3, listing orders appealable from the magistrates division to the district court is identical to the language in I.C. § 19–2803 (repealed 1977) listing the orders appealable from the district court to this Court. Therefore, we hold that their meanings are identical and that our construction of the term "final judgment of conviction" found in I.C. § 19–2803 (repealed 1977) is also applicable to that same term in Criminal Appellate Rule 3.

█ The state has argued that the district court order that Wagenius serve thirty days in the county jail as a condition of withheld judgment is not a "final judg-

Idaho Appellate Rules expressly provide that an appeal may be taken from an order withholding judgment in criminal proceedings. I.A.R. 11(C)(1).

ment" under I.C. § 19–2803 (repealed 1977), and therefore not an appealable order. We disagree. An order withholding judgment, but imposing the criminal sanctions of payment of costs or a fine or incarceration, is a *de facto* judgment of conviction and thus an appealable order under the statute.[2] From the standpoint of the defendant, the payment of costs or a fine or the service of a jail or prison term pursuant to an order withholding judgment is punishment indistinguishable from the payment of costs or fine or the service of a jail or prison term pursuant to a judgment of conviction. To hold that the former order is not appealable because it was given in a document captioned "withheld judgment" while the latter order is appealable because it was given in a document captioned "judgment of conviction" would elevate form over substance and would in effect authorize the lower courts to impose punishment based on a finding of guilt which could not be reviewed by appeal. Applying a more reasonable interpretation of the statute, we look at the practical effect of the orders and construe such orders imposing the payment of costs and a fine or incarceration to be final judgments of conviction, regardless of language in the order which states that no judgment has been rendered. *Korematsu v. United States*, 319 U.S. 432, 63 S.Ct. 1124, 87 L.Ed. 1497 (1943). *Cf. Franklin v. State*, 87 Idaho 291, 392 P.2d 552 (1964); *State v. McNichols*, 62 Idaho 616, 115 P.2d 104 (1941). Therefore, the order issued in No. 11988 withholding judgment but sentencing Wagenius to a jail term, and the order issued in No. 12070 withholding judgment but ordering DeVoe to pay costs and a fine and to serve a jail term, were both final judgments of conviction for purposes of appeal.

2. By construing the orders of the courts in No. 11988 and No. 12070 to be *de facto* judgments and thus appealable orders, we have necessarily held that an appeal must be taken from these orders within the same time period that appeals must be taken from other judgments of conviction. This does not mean, however, that a defendant subject to an order withholding judgment and imposing criminal sanctions who

IV

## THE IMPOSITION OF SANCTIONS WITHOUT ENTRY OF A FORMAL JUDGMENT OF CONVICTION

The orders involved in these two cases were not judgments of conviction, but by their express terms were orders withholding judgment and promising the eventual dismissal of the case on the condition that the defendant comply with the terms of the orders. The order involved in No. 12070, *State v. DeVoe*, must be set aside, as we rule in Part II of this opinion, because the conviction upon which the order was based cannot be sustained. Nevertheless, No. 11988, *State v. Wagenius*, presents the issue whether the trial courts may impose penal sanctions as conditions of such withheld judgments. Our inquiry commences with I.C. § 19–101 which provides:

"19–101. LEGAL CONVICTION NECESSARY TO PUNISHMENT.—No person can be punished for a public offense except upon a legal conviction in a court having jurisdiction thereof."

This statute was first enacted by the Idaho Territorial Legislature as part of the Criminal Practice Act of 1864. 1864 Idaho Sess. Laws, ch. 2, § 5, at 234. In that act the legislature first set forth the fundamental principles of criminal procedure in this state. I.C. § 18–109, also first enacted as part of the Criminal Practice Act of 1864, 1864 Idaho Sess.Laws, ch. 2, § 1, at 234, indicates the sanctions the legislature considered to be criminal punishment and which could not properly be imposed "except upon a legal conviction":

"18–109. DEFINITION OF CRIME.—A crime or public offense is an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of the following punishments:

did not appeal from that order within the prescribed period is precluded from testing the legality of any further sanctions imposed by the court, whether they be further punishment, entry of judgment of conviction, or revocation of probation. These would all be "order[s] made after judgment, affecting the substantial rights of the party," and appealable under I.C. § 19–2803 (repealed 1977).

"1. Death.

"2. Imprisonment.

"3. Fine.

"4. Removal from office; or

"5. Disqualification to hold and enjoy any office of honor, trust or profit in this state."

Reading § 19–101 together with its companion, § 18–109, it is apparent that the legislature intended that neither death, imprisonment, fine nor removal or disqualification from office be imposed as punishment for a crime without there first being "a legal conviction" of that crime. We must decide whether I.C. § 19–101 prohibits the courts from imposing the criminal sanctions listed in I.C. § 18–109 when a court has not entered a judgment of conviction, but has withheld it pursuant to I.C. § 19–2601.

■ The word "conviction" is susceptible to two meanings—an ordinary or popular meaning which refers to the finding of guilt by plea or verdict, and a more technical meaning which refers to the final judgment entered on a plea or verdict of guilty. *Vasquez v. Courtney*, 272 Or. 477, 537 P.2d 536 (1975); *State v. Hanna*, 179 N.W.2d 503 (Iowa 1970). In the latter case conviction has not occurred until the judgment is entered by the court. In *State v. O'Dell*, 71 Idaho 64, 225 P.2d 1020 (1950), we stated:

" 'Convicted' as ordinarily used in legal phraseology as indicating a particular phase of a criminal prosecution, includes the establishing of guilt whether by accused's admission in open court by plea of guilty to the charges presented, or by a verdict or finding of a court or jury.

"In a more technical, legal sense, conviction means the final conclusion of the prosecution against the accused, including the judgment and sentence rendered pursuant to a verdict or plea of guilty, and it is frequently used to denote the judgment or sentence. [Citations omitted]. A person, after plea of guilty or verdict, has been convicted when the court decrees that he is guilty." *Id.* at 68, 225 P.2d at 1022.

The definition to be applied is not always uniform, but varies with the particular law or statute under consideration. *Summerour v. Cartrett*, 220 Ga. 31, 136 S.E.2d 724 (1964).

Our prior decisions have not been totally consistent and, for that matter, neither has the legislation upon which they were based. In *Ex parte Medley*, 73 Idaho 474, 253 P.2d 794 (1953), we stated:

"The statute [I.C. § 19–2601, authorizing the withholding of judgment] does not require that the court must first adjudicate the guilt of defendant. The obvious and commendable objective of the Act which seeks in a proper case to avoid the stigma of a judgment of conviction would be in major part defeated if the contention of petitioner is accepted. To withhold judgment after a plea of guilty protects the defendant at that time *against the stigma of a conviction* which may be forever avoided should the defendant conform to its terms and conditions. This creates, and rightfully so, a hope in the heart of the accused that he may ultimately be released under an order of probation without the stigma of a judgment of conviction. This is an incentive for complete rehabilitation and reform, one of the salutary objectives of the Act." *Id.* at 479, 253 P.2d at 797. (Emphasis added).

We ruled in *State v. Cliett*, 96 Idaho 646, 534 P.2d 476 (1975), that a withheld judgment is not a conviction under I.C. § 9–1209, which permits impeachment by proof of a felony conviction. We concluded in *Cliett* that "[w]here judgment has been withheld, as authorized by I.C. § 19–2601, judgment has not been entered; and it follows that there is no valid conviction which can be used for impeachment. See *State v. Barwick*, [94 Idaho 139, 483 P.2d 670 (1971)]." 96 Idaho at 649, 534 P.2d at 479. However, in *State v. Chauncey*, 97 Idaho 756, 554 P.2d 934 (1976), we held that for purposes of I.C. § 18–308, which provides for consecutive sentences "[w]hen any person is convicted of two (2) or more crimes before sentence has been imposed upon him for either . . .," conviction occurs

when the defendant pleads guilty and that plea is accepted by the court. *Accord State v. Lawrence,* 98 Idaho 399, 565 P.2d 989 (1977). *Cf. United States v. Locke,* 409 F.Supp. 600 (D.Idaho 1976) (holding that a defendant subject to an Idaho District Court order conditionally withholding a judgment of conviction of burglary had been convicted of a felony for purposes of a federal statute prohibiting convicted felons from possessing firearms) *aff'd* 542 F.2d 800 (9th Cir. 1976).

In the earlier case of *Franklin v. State,* 87 Idaho 291, 392 P.2d 552 (1964), a plurality opinion joined only by two members of the Court concluded that incarceration could not be imposed as a condition of a withheld sentence and probation. However, that opinion appeared to be based upon an interpretation of I.C. § 19–2601, rather than I.C. §§ 19–101 and 18–109.

The opening sentence of I.C. § 19–2601 seems to contemplate that a "conviction" is a determination of guilt rather than a judgment or sentence:

"Whenever any person shall have been convicted, or enter a plea of guilty . . the court in its discretion, may:

. . . . .

"3. Withhold judgment on such terms . . . ."

Other statutes, although not models of clarity, tend to support this view. I.C. § 19–2305, which pertains to forms of general verdicts, provides that a verdict of guilty "imports a conviction." I.C. § 19–2314, which pertains to the reconsideration of a verdict, refers to a "verdict of conviction." I.C. § 19–2706 requires the court "at which a conviction for murder is had [to forward the governor] a statement of the conviction and judgment, and of the testimony given at trial." These latter two statutes were also part of the Criminal Practice Act of 1864 which also included I.C. §§ 19–101 and 18–109. 1864 Idaho Sess.Laws, ch. 2, §§ 1, 5, 413–14 at 234 and 288.

We conclude that for purposes of I.C. § 19–101 conviction occurs when a verdict or plea of guilty is accepted by the court. Accordingly, where a verdict or plea of guilty has been accepted by the court but judgment on that plea or verdict has been withheld, § 19–101 does not preclude the imposition of criminal punishment, fines and imprisonment, as conditions of that withheld judgment.

But neither does § 19–101 authorize the imposition of criminal sanctions as a term of withheld judgments. For such authorization we must look to § 19–2601 which provides:

"19–2601. COMMUTATION, SUSPENSION, WITHHOLDING OF SENTENCE —PROBATION.—Whenever any person shall have been convicted, or enter a plea of guilty, in any district court of the state of Idaho, of or to any crime against the laws of the state, except those of treason or murder, the court in its discretion, may:

"1. Commute the sentence . . . .; or

"2. Suspend the execution of judgment . . . and place the defendant on probation under such terms and conditions as it deems necessary and expedient; or

"3. Withhold judgment on such terms and for such time as it may prescribe and may place the defendant on probation; or

"4. Suspend the execution of the judgment at any time during the first one hundred and twenty (120) days of a sentence to the custody of the state board of correction . . . and place the defendant on probation under such terms and conditions as it deems necessary and expedient . . . .

"5. If the crime involved is a felony and if judgment is withheld as provided in 3 above or if judgment and a sentence of custody to the state board of correction is suspended at the time of judgment in accordance with 2 above or as provided by 4 above and the court shall place the defendant upon probation, it shall be to the board of correction.

"6. If the crime involved is a misdemeanor, indictable or otherwise, or if the court should suspend any remaining portion of a jail sentence already commuted in accordance with 1 above, the court, if

it grants probation, may place the defendant on probation. . . . ."

The question raised is whether subsection 3, which provides that the court may "withhold judgment on such terms and for such time as it may prescribe and may place the defendant on probation" authorizes a trial court to impose punishment, fines or imprisonment, assess costs and require restitution as conditions of a withheld judgment. In *dicta* we previously considered this issue in *Franklin v. State, supra.* Because of the differences in the four separate opinions contained therein, that case is of limited guidance.[3] In *State v. Bassett,* 86 Idaho 277, 385 P.2d 246 (1963), and *State v. Sandoval,* 92 Idaho 853, 452 P.2d 350 (1969), we considered sentences which had been suspended and the defendant placed on probation as authorized by § 19–2601(2), with imprisonment a condition of that probation and suspended sentence. Though we did not directly address the issue whether imprisonment may be imposed as a condition of a sentence suspended under § 19–2601(2), the authority to do so was not contested in those appeals.

■ We see no reason why the terms which the court may prescribe as conditions of a withheld judgment pursuant to subsection 3 should be more limited than the terms which the court may prescribe as conditions of a suspended sentence and judgment pursuant to subsection 2, which include fines and imprisonment. Under subsection 2 a judgment is entered but its execution is suspended. Under subsection 3 the judgment is not entered, but withheld. The introductory language in § 19–2601 states: "Whenever any person shall have been convicted, or enter a plea of guilty, . . . the court in its discretion, may . . . ." It is clear that the sentencing alternatives provided in § 19–2601 become available to the court after a person has been convicted by a verdict of guilty, or a plea of guilty has been entered.[4] Whether judgment has been formally entered does not affect the availability of the sentencing alternatives provided in § 19–2601. However, entry of a judgment is required to implement some of the sentencing alternatives, particularly those provided in subsections 1, 2 and 4.

■ It is apparent from the broad language of § 19–2601 that the legislature intended the courts to have maximum flexibility to fashion the sentence most appropriate to the individual defendant. The statute therefore must be liberally construed. The ability to withhold a judgment and thereby spare the defendant, particularly a first time offender, the burden of a criminal record, and yet, to emphasize the seriousness of the defendant's action by conditioning that withheld judgment on a period of incarceration or payment of a fine is certainly one of the many sentencing alternatives the legislature intended to be available to the courts. Likewise, the payment of court costs[5] and restitution are also proper and often very useful conditions of with-

3. *Dicta* in the opinion by Justice Smith stated that a court may not prescribe incarceration as a condition of probation since that authority is not specifically granted by I.C. § 19–2601. In a separate concurring and dissenting opinion, Justice McQuade concurred in the result but objected to the conclusion that the court may not impose incarceration as a condition of probation, stating that the statute should be liberally construed. Justices Taylor and Knudsen, in separate opinions, concurred with the result reached in Justice Smith's opinion, but concurred with Justice McQuade with respect to the court's jurisdiction to impose incarceration as a condition of probation.

4. The word "convicted" in that statute clearly refers to the stage of criminal procedure in which guilt is determined. We therefore apply the same definition to "convicted" in I.C. § 19–2601 as we did to "conviction" in *State v. Chauncey, supra.* To read "convicted" as requiring the entry of a judgment of conviction would result in the anomalous situation in which these sentencing alternatives would not be available until a judgment is entered if the defendant is found guilty by a jury verdict, but would be immediately available before a judgment is formally entered if the defendant pleads guilty.

5. I.C. § 31–3201A(b) provides that a court fee of $7.50 "shall be paid . . . by each person found guilty of any felony or misdemeanor or any minor traffic, conservation or ordinance violation except when counsel has been appointed by the court . . . ."

held judgments and probation. Indeed, I.C.R. 32(d),[6] which implements the court's exercise of the authority granted by § 19–2601, specifically lists the payment of court costs, restitution and participation in self-education and rehabilitation programs as among the lawful provisions which may be conditions of withheld judgments and probations.

## V

In No. 12070, *State v. DeVoe*, we are also presented with substantive questions of law as well as the procedural issues already discussed.

The magistrate found DeVoe guilty of a violation of I.C. § 18–3107, which provides in pertinent part:

"18–3107. FRAUDULENT PROCUREMENT OF FOOD, . . .—It shall be unlawful for any person to obtain food . . . at any . . . restaurant . . . with intent to defraud the owner or keeper thereof by not paying for the same. . . ."

I.C. § 18–3108 establishes the following presumption for proof of fraudulent intent:

"18–3108. PROOF OF FRAUDULENT INTENT IN PROCURING FOOD . . .—Proof that . . . any person absconded without paying or offering to pay for such food . . . shall be prima facie proof of the fraudulent intent mentioned in the preceding section."

At trial DeVoe admitted that he and a companion had left the restaurant without paying for the food and drinks they had ordered and consumed, but maintained that he had not intended to defraud the restaurant, but had merely forgotten to pay the bill, primarily because he had been intoxicated at the time. At the close of the testimony, the magistrate stated:

"I think what it really boils down to is the question as to whether there was an intent to defraud and as to whether intoxication is any excuse for that. I think the law is pretty clear on it that intoxication is no defense. It doesn't appear to me apart from what I've heard here today that either one of you were so intoxicated and so drunken that you could not have possibly formed the necessary intent to violate the law.

"I would merely point out under 18–3108 of the Idaho Code it does say that if you abscond without paying or offering to pay for the food, lodging or other accommodations, that's prima facie evidence of a fraudulent intent. And it does appear to the Court that you did, even from your own admissions, leave without paying for it. Apparently your basis of defense was that you merely forgot and didn't have the intent or that you were so intoxicated, you didn't know what you were doing. However, I have to draw the question of intent from the circumstantial evidence and the facts as it appears to the Court.

. . . . .

"And, again, I don't think intoxication under the law is any defense, and certainly it doesn't appear to me that either one of you was so drunk that you couldn't possibly form the necessary intent. You both knew what you were doing . . .

---

6. "RULE 32. SENTENCE AND JUDGMENT. —. . .

. . . . .

"(d) Commutation of Sentence and Suspending or Withholding Judgment—Conditions. For an offense not punishable by death, the district court or the magistrates division may commute the sentence, suspend the execution of the judgment, or withhold judgment or place the defendant upon probation as provided by law. Provided, however, that the conditions of a withheld judgment or of probation shall not include any requirement of the contribution of money or property to any charity or other non-governmental organization. The conditions of a withheld judgment or probation may include, among other lawful provisions, a requirement that the defendant make restitution to a party injured by the defendant's action. The conditions of a withheld judgment or probation may also include the requirement of payment of a specific sum of money for the prosecution of the criminal proceeding against the defendant, which sum of money shall be paid to the court and distributed and dispensed in the same manner as provided for the distribution of fines or forfeitures under I.C. § 19–4705. Such conditions may also include the ordering of voluntary services for self-education purposes as part of a positive program of rehabilitation. . . . "

"And, therefore I do feel beyond a reasonable doubt it has been shown that you did fraudulently procure the food and lodging and that you did abscond or leave without paying for it."

 It is clear from a reading of I.C. § 18–3107 that fraudulent intent is a necessary element of the crime with which the defendant is charged. I.C. § 18–3108 further provides that a *prima facie* case of fraudulent intent is made by "proof that . . . any person *absconded* without paying or offering to pay for such food." (Emphasis added.) Since the state's case was based upon the *prima facie* case resulting from the defendant's alleged absconding, the question which this appeal poses is whether or not there is any evidence in the record to support the trial court's finding that the defendant "absconded."

 All of the dictionary definitions of "abscond" indicate that to abscond means to depart clandestinely, secretly, or surreptitiously. *See* Black's Law Dictionary (4th ed. 1968); Webster's New International Dictionary (3d ed.). It is not sufficient that the state prove merely that the defendant left the premises without paying. There must be some evidence, either direct or circumstantial, that the departure was secretive, clandestine, or surreptitious in order for it to constitute "absconding." The record suggests that the magistrate may not have recognized this distinction when he stated, "I do feel beyond a reasonable doubt that it has been shown that you did fraudulently procure the food and lodging and that you did *abscond or leave* without paying for it." (Emphasis added.) The appellant alleges that there is no evidence in the record to show that he "absconded," i. e., that he left secretly, clandestinely or surreptitiously.

The entire case of the prosecution consisted of the testimony of the security guard who observed the defendant and his companion enter the restaurant in an "intoxicated condition" at approximately 11:00 p. m. and stay until roughly 1:45 a. m.

 His testimony is not clear as to whether or not he observed them leave. On direct examination he stated,

"I observed these two gentlemen get up and walk out of the coffee shop and then proceed to walk out of the building itself."

When asked if he followed them immediately, he said:

"No, I did not. The waitress came over and told me that they had left their ticket on the table. I went over and picked it up and followed them and caught them outside as they were proceeding to leave."

However, in response to a later question by the prosecuting attorney in his direct examination as to whether or not he picked up the meal ticket as soon as the defendant and his companion left the table, he answered:

"No, I was doing—I was in the other part of the building at the time checking the bar and everything. And I came back in and the waitress told me that these two gentlemen had walked out on their ticket. So I went over there and got the ticket off the table and proceeded to get these gentlemen back inside."

On cross examination by the defendant, who appeared *pro se*, the security guard testified:

"Q. You didn't see us actually leave walking out of the building—from like over by the restaurant area?

"A. No, I did not.

"Q. So you wouldn't be able to see that we were like running out of there or something like that?

"A. No, I didn't cause—at the time the waitress said you just walked out.

"Q. And when we were outside, we didn't try to run or take off, split up or divide . . . .

"A. No, no, I didn't.

"Q. And when you first called to us, it wasn't like 'You're under arrest'. You just called and said 'Come on back' and we went back just to see what was going on or what was happening.

"A. Right."

The foregoing testimony is the only evidence relating to the manner in which the defendant and his companion left the restaurant. The question which we must decide is whether or not, based upon that evidence, the magistrate was justified in finding that the defendant "absconded" as we have defined that term above. We think not. There is nothing in that testimony which would justify a finding that what the defendant did was secretive, clandestine or surreptitious. Without such evidence the defendant's conduct would not constitute "absconding" within the meaning of I.C. § 18–3108, and therefore there was no "prima facie case of fraudulent intent." There is nothing else in the record from which the Court would be justified in finding the necessary element of fraudulent intent required by I.C. § 18–3107. The magistrate's finding that defendant DeVoe was guilty of violating I.C. § 18–3107 is not supported by the evidence and is therefore reversed. *See State v. Erwin,* 98 Idaho 736, 572 P.2d 170 (1977).

## VI

■ In *State v. Wagenius,* No. 11988, the defendant also argues that the thirty day jail term in addition to the two years probation was excessive, considering her prior record, her age and the fact that she is the mother of a young child. The maximum penalty for the first conviction of issuing a check under $25 with insufficient funds is "imprisonment in the county jail for a term not exceeding six (6) months, or by a fine not exceeding $300 or by both such fine and imprisonment . . ." I.C. § 18–3106(c). While on the record which we are reviewing a thirty day jail sentence might appear to be harsh, we do not have the benefit of personally viewing the defendant as the trial court did at the time of the plea and sentencing. She may have displayed no remorse for her act, or worse, could have been contemptuous of the law and the court. Under such circumstances a short period of confinement could have a salutory effect on the defendant's future obedience of the law. Until such

time as technology permits the recording of all of the nuances of human behavior and emotion which transpire in the courtroom, our review and reversal of trial courts' sentencing judgments will necessarily have to be limited to those cases in which from the record it clearly appears that the trial court abused its discretion. We cannot say that such an abuse occurred on this record.

Moreover, it is not certain that the defendant will actually serve the thirty day jail term. Pursuant to I.C.R. 35 the trial court may, in its discretion, reduce the sentence within 120 days following the trial court's receipt of this Court's affirmance. Accordingly, the trial court still has discretion to reduce or modify the sentence in light of changes which may have occurred while this appeal was pending and so as to accommodate the defendant's family and employment responsibilities, if the trial court determines that the situation warrants such accommodation.

*State v. DeVoe,* No. 12070, is *reversed,* and *State v. Wagenius,* No. 11988, is *affirmed.*

SHEPARD, C. J., and DONALDSON, J., concur in Parts I, II, III, IV and VI.

McFADDEN, J., concurs in Parts I, II, III, V and VI.

BISTLINE, J., concurs in Parts I, II, III, IV and V.

McFADDEN, Justice, concurring in part and dissenting in part.

In regard to the opinion written by Justice Bakes, Part I and II thereof require no answer as they are merely factual statements. I concur in Part III of the opinion.

However, I disagree with Part IV for the reasons stated by Justice Smith in *Franklin v. State,* 87 Idaho 291, 392 P.2d 552 (1964), wherein he concluded that in the absence of specific statutory enactment a court is without authority to impose jail sentences or fines incident to a probation order. I joined in that opinion, and while I recognize that portion of the plurality opinion is considered as a dissent, I am convinced that the

views expressed were and still are correct. Here the majority opinion faults that opinion as being limited to a consideration of only I.C. § 19–2601, rather than considering I.C. §§ 19–101 and 18–109. However, in my view these latter statutes are inapplicable to a case in which a withheld judgment is being used as a rehabilitative measure. If punishment is the goal, then I.C. § 19–101 is appropriate and a jail sentence or fine may be imposed; but an accused should not be enticed with the prospect of a withheld judgment, and then immediately sentenced and obligated to serve jail time or to pay a fine. In my view the two, i. e., a sentence (imprisonment or fine) and a withheld judgment, are totally incompatible, conceptually and legally, and their combined use is without statutory authority.

I also concur with Part V dismissing the action against DeVoe.

DONALDSON, Justice, concurring and dissenting.

I dissent from Part V of the majority opinion. My brethren in the majority have departed from their normally rational temperament and here employ a limited and technical construction of I.C. § 18–3107 and § 18–3108.

The majority reverses in Part V based on its interpretation of the requirements of I.C. § 18–3107 as defined by I.C. § 18–3108 [1] and particularly the word "abscond." The obvious infirmity in the majority's reasoning is their construction that overlooks our role as appellate justices; that we are merely asked to judge the works and actions of normal human beings. "The law is not a series of calculating machines where definitions and answers come tumbling out when the right levers are pushed." William O. Douglas, *The Dissent, a Safeguard of Democracy,* 32 J.Am.Jud.Soc. 105 (1948).

A plain reading of the two statutes involved would give fair notice to all that a person is subject to criminal liability should that person leave a restaurant with the intent of not paying for the food he just ate. Somehow the majority, by referring to a dictionary definition for one of the 86 words in I.C. § 18–3108, finds a hidden meaning in those statutes.

It must be remembered: "As in other sciences, so in politics, it is impossible that all things should be precisely set down in writing; for enactments must be universal, but actions are concerned with particulars." Aristotle, 2 Politics at 8.

A short analysis will show the fallacy inherent in the type of legal interpretation employed by the majority opinion. The majority requires the state to prove DeVoe "absconded" [2] from the premises. This is

---

1. Justice Bistline intimates that we have previously ruled I.C. § 18–3108 unconstitutional by implication in *State v. Grimmett,* 33 Idaho 203, 193 P. 380 (1920). This is apparently because Justice Bistline feels statutes creating prima facie evidence unfairly affect the presumption of innocence.

 *State v. Grimmett, supra,* did not deal the "death blow" to I.C. § 18–3108. Two statutes of prima facie evidence were involved in *Grimmett.* One of these statutes said the brand on an animal shall be prima facie evidence that the animal belongs to the owner of the brand. The other statute provided that anyone slaughtering a cow must keep the hide with the brand for thirty days to prove ownership. Failure to do so was prima facie evidence of the commission of grand larceny.

 In *Grimmett* the Court criticized this second statute, not on the grounds of a shifting burden, but because the statute was overly broad: "If the statute had referred only to the alteration of brands upon the hide, or the defacement

of other marks thereon, possibly there might have been some connection between the act and the fact to be presumed." *Id.* at 210, 193 P. at 382.

 *Grimmett* clearly did not address any issue related to those here. *Grimmett* involved the grand larceny of a cow and did not involve fraud in any form.

 A check reveals a veritable cornucopia of authority that has upheld the constitutionality of statutes identical to I.C. §§ 18–3107, –3108. *See Smith v. State,* 141 Ga. 482, 81 S.E. 220 (1914); *Clark v. State,* 171 Ind. 104, 84 N.E. 984 (1908); *State v. Benson,* 28 Minn. 424, 10 N.W. 471 (1881); *State v. Kingsley,* 108 Mo. 135, 18 S.W. 994 (1892); *Commonwealth v. Berryman,* 72 Pa.Super. 479 (1919); *See generally,* Annot., 51 A.L.R. 1160 (1927).

2. My dictionary tells me that the word "abscond" has Latin origins, being a combination of ab (from) and condere (hide). Websters New World Dictionary 3 (1973). The evidence in this case, as applied to I.C. § 18–3108, could

explained to mean DeVoe must be shown to have secretly, clandestinely, surreptitiously left the restaurant. The statute does not require such.

What the statute does require is an intent to defraud. Idaho Code § 18–3107 sets out the crime of which DeVoe is accused. The word "abscond" appears only in the next section, I.C. § 18–3108. The purpose of this second section is to give the state one way, but by no means the only way, to prove a violation of I.C. § 18–3107.[3]

The majority reverses the finding of the trial court because of the trial judge's use of the word "abscond." However, the trial judge understood very well the requirement of the statute. He stated, "I think what it really boils down to is the question as to whether there was an intent to defraud and as to whether intoxication is any excuse for that. . . ."

Proving fraudulent intent is not easy, considering the very personal nature of fraud. Again, in the words of the trial judge, "I have to draw the question of intent from the circumstantial evidence and the facts as it appears to the Court."

These statements show the trial judge understood the requirements of I.C. § 18–3107 and applied them at trial. The testimony at trial consisted of the security guard at the restaurant, the defendant De-Voe and a co-defendant who ate with De-Voe. DeVoe's defense was that he was too intoxicated to form the intent to defraud and that he had just merely forgotten to pay the check. The judge heard this testimony and chose to disbelieve it. His finding of guilt was based on his opinion that DeVoe did possess the fraudulent intent, the finding was not based on an erroneous reading of the law. The trial judge held:

It doesn't appear to me . . . that either one of you were so intoxicated and so drunken that you could not have possibly formed the necessary intent to violate the law.

[C]ertainly it doesn't appear to me that either one of you was so drunk that you couldn't possibly form the necessary intent. You both knew what you were doing. . . .

"The determination of the credibility of witnesses and the weight to be given their testimony are exclusively within the province of the trier of facts." Comish v. Smith, 97 Idaho 89, 91, 540 P.2d 274, 276 (1975).

Recognition of the trial court's advantages has resulted in a rule regarding the scope of review. "The special deference accorded the findings of fact of the court below is a recognition of the special opportunity of the lower court to assess the credibility of the witnesses in the proceeding there. I.R.C.P. 52(a)" Prescott v. Prescott, 97 Idaho 257, 261, 542 P.2d 1176, 1180 (1975).

Intent to defraud is a question of fact within the province of the trial court. Because the evidence in this case consisted of the testimony of three persons, the trial judge is in a far better position than we to ascertain whether DeVoe possessed the requisite intent.

"[W]hether a fraudulent intent exists is said to be a question of fact for a trial court rather than of law for an appellant tribunal." Grant v. Segawa, 44 Cal.App.2d Supp. 945, 112 P.2d 784, 786 (1941).

The trial judge could well have found this intent to defraud by the fact that DeVoe left without even taking the check from the table. In fact, the trial judge did find

very well mean that the defendant was hiding the fact that he was leaving the restaurant *without paying*. He does not necessarily have to be shown to be hiding the fact that he was leaving the restaurant for the fact-finder to uncover an intent to defraud. What the defendant could be doing by leaving his check at his table, is hiding the fact that he was not paying for his food.

3. One court has justified these statutes, which establish a prima facie case of fraudulent intent, as follows: "It is not going beyond sound reason to say that when a person asks for and receives accommodations at a hotel for which he does not pay . . . he should assume the burden of showing an honest intent." *Ex Parte Milecke*, 52 Wash. 312, 100 P. 743, 745 (1909).

DeVoe possessing the requisite intent and he chose to disbelieve the intoxication defense. There is evidence to support this finding. This finding should not be disturbed, especially on the ground of a dictionary definition of one word that is not a part of the crime.

SHEPARD, C. J., concurs.

BISTLINE, Justice, concurring and dissenting.

I

I join in the majority opinion, excepting Part VI. In Part VI, the majority upholds the sentence meted out by the district court to Ms. Wagenius. The Court's opinion indicates at least an attempt at meaningful appellate court review, the lack of which I objected to in *State v. Adams*, 99 Idaho 75, 577 P.2d 1123 (1978).

Janella Wagenius's attempt at budgeting the spending of her welfare check was not a success. Divorced in September, 1974, at the age of 20 and awarded custody of a one and a half year old baby, she opened the ill-starred bank account on December 5, 1974, with a $170.00 deposit. Bank records placed in evidence showed she was completely out of money by December 19, most of her sparse account having gone to local grocery outlets.

The presentence investigator, Mr. Gordon Hood, presented a complete report on Ms. Wagenius, which included her statement as to how poor management of a checking account ran her afoul of the law:

I ordered oil from the Co-Op Supply Company. Don Chamberlain brought the oil and so I wrote him a check and he took it and left. Then about a month later Rich Walters, works for the Police Department, came to my home and said that there was a warrant out from Co-Op Supply for me from writing a bad check, so I went with him to the City Hall and he showed me the warrant and then he fingerprinted me and took a picture.

That same day I went to Court and a lawyer was to be appointed to me and it's

Mike Verbillis. Then I had to go talk to him (I got out on my O.R.) so we went back to Court a couple weeks later. I then found out there were some more checks that hadn't gone through so we contacted the businesses and I made arrangements to pay them back.

Mr. Hood's report noted Wagenius' totally innocuous prior record of one minor traffic violation, to-wit: inattentive driving. He concluded that she was in need of vocational rehabilitation and suggested that she consult with a volunteer counselor, and that she pursue a G.E.D. certificate. He recommended Wagenius as a candidate for a withheld sentence probation and suggested restitution as to outstanding dishonored checks.

At the hearing the trial court expressed concern that it would be impossible for her to make restitution out of her $218 income, the amount of her monthly check. The deputy prosecuting attorney at this point interjected the proposition that, in the last six months, he had been seeing more often where welfare individuals were "getting into the check-writing area." As to Ms. Wagenius, however, he stated: "She can find a job and make restitution." Nevertheless, the trial court reasoned:

THE COURT: This does pose a dilemma for the Court in trying to figure out what to do and it would seem only fair that a requirement of restitution be made but at the present level of income it would appear totally impossible. I am concerned as you express too, Mr. Brown, people cannot expect just because they may be in difficult financial stress to go out and write checks and not expect to face the consequences. Mrs. Wagenius, it will be the order of this Court the judgment and sentence in this matter be withheld for a period of three years. *The conditions under which the sentence is to be withheld are as follows. That you first will be incarcerated in the Kootenai County jail for a period of thirty days.* Upon completion of that period, under the direction of the State Board of Corrections. the conditions for continued withholding of sentence and judgment

that you not violate any laws of this state, city, or county therein. (Emphasis supplied.)

On a point of legal theory, we are not, strictly speaking, engaged in "sentence" review. Rather, as the foregoing remarks show, "sentence" was not imposed, but specifically was withheld. "Incarceration" was ordered, as a part of her probation. Justice McFadden's dissent from Part IV of the Court's opinion raises very serious doubts that "incarceration" of any kind, absent a judgment of conviction, is constitutionally permissible.

Of one thing I am certain, however, and that is that 30 days in the Kootenai County jail is excessive, and it is uncalled for. The majority opinion says it might appear to be harsh, but is willing to go along with it because the Court members "do not have the benefit of personally viewing the defendant as the trial court did at time of the plea and sentencing. She may have displayed no remorse for her act, or worse, could have been contemptuous of the law and the court." [1] Having *speculated* as to such possibilities, the opinion then accepts them as true, and proceeds to declare that "a short period of confinement could have a salutary effect" on her future behavior.

It is clear that meaningful sentence review in Idaho remains somewhere in the distant future. Any jail time in this case, whether under sentence, or incarceration as part of probation, beyond one 24-hour day, is totally unjustified.

Ms. Wagenius will, I am certain, be grateful for the Court's subtle suggestion to the trial judge that he is not obliged to incarcerate her for the specified 30 days. For my part, I suggest that the trial court is thoroughly knowledgeable in the law, and did not need this advice. Being less inclined to subtlety, I suggest outright that if Ms. Wagenius has made a sincere effort at paying off or reducing her debts, the proper disposition of the case is outright dismissal

and discharge, as envisioned by the legislature in enacting § 19–2604(1). Clearly, the successful completion of two years of a three year probation period, during which she was subject to the constant threat of 30 days' incarceration in the Kootenai County jail, together with some bona fide effort at restitution, should result in a dismissal and discharge as being "compatible with the public interest."

II

In Part V, the majority opinion overturns the conviction of Craig DeVoe on a charge that he did

> knowingly, wilfully, intentionally, unlawfully and fraudulently procure food at the Cock of the Walk restaurant, . . . with the intent and purpose by fraudulent pretenses to fail to pay any value for said food and then and there deprive the proprietor of Cock of the Walk, out of the value of the same in the amount of Thirteen Dollars and Eighteen Cents ($13.18).

As Justice Bakes' diligent perusal of the record demonstrates, there was no evidence at all to sustain this charge, much less to sustain it beyond a reasonable doubt, as is necessary for any criminal conviction to stand in Idaho. *State v. Erwin*, 98 Idaho 736, 572 P.2d 170 (1977).

Justice Donaldson, in dissent, complains that "the majority have departed from their normally rational temperament" and here employ a limited and technical construction of I.C. §§ 18–3107 and 3108. This is a serious accusation deserving of a reply. As the majority opinion notes, the Idaho innkeepers' statute makes it a crime "to obtain food . . . at any . . . restaurant . . . with intent to defraud the owner or keeper thereof by not paying for the same." I.C. § 18–3107. The "fraudulent procurement of food" which is proscribed by I.C. § 18–3107 is a crime of specific intent. It could not be otherwise. Idaho, like most other states, has an express

---

1. The record shows that the 23-minute hearing was consumed by court and counsel: Wagenius herself said "Yes" twice, "No" once and nodded her head once. Obviously she may or may not have displayed a remorseful countenance, and we have no way of knowing. May Heaven help the more stoic defendants who are brought before the court.

constitutional prohibition against imprisonment for debt "*except in cases of fraud.*" Idaho Const. art. 1, § 15. That the language was not lightly chosen is clear from the fact that the constitutional convention rejected a more lenient formulation which would have required only a "strong presumption of fraud." Mr. Reid, speaking in defense of the stricter language, stated:

> As recognized now in most states you can arrest a debtor in a civil action in any case of fraud, for instance an absconding debtor. I do not like the expression there "where there is a strong presumption of fraud." I think *the affidavit should always show such a state of facts that the court in passing upon it shall find there was fraud when he issues the order of arrest*, and the substitute I have sent up embodies the statement contained in most constitutions. Where there is fraud he can always be arrested, as an absconding debtor. (Emphasis supplied.)

Constitutional Convention Proceedings, Vol. I, p. 370.

This constitutional prohibition against imprisoning debtors "except in cases of fraud," has several strict corollaries. In the first place, any statute which made mere non-payment of debt a criminal offense would be unconstitutional. *See,* for example, *People v. Vinnola,* 177 Colo. 405, 494 P.2d 826 (1972) in which the Supreme Court of Colorado held that state's insufficient funds check statute unconstitutional for precisely such a defect. In like manner an information which failed to allege the specific intent of criminal fraud in the procurement of food or lodging would be "fatally defective" as having omitted an essential element of the crime and any conviction based thereon would have to be overturned. *Agnew v. State,* 474 S.W.2d 218 (Tex.Crim. App.1971). Finally, the constitution makes it clear that "*[s]uch an intent could not be inferred solely from the naked fact of nonpayment.*" (Emphasis added.) *People v. Ausley,* 185 Colo. 256, 523 P.2d 460 (1974). The Idaho statute, according to its drafters, was modeled on that of North Carolina. Constitutional Convention, Vol. II, p. 1633. The Supreme Court of North Carolina, like that of Colorado, has repeatedly held that the mere "failure to pay is not sufficient evidence of an intent to defraud." *State v. McRae,* 170 N.C. 712, 86 S.E. 1039, 1040 (1915). *And see State v. Barbee,* 187 N.C. 703, 122 S.E. 753 (1924); *State v. Hill,* 166 N.C. 298, 81 S.E. 408 (1914).

Thus there is no merit to the dissent's allegation that the majority's interpretation of the word "abscond" is based solely upon dictionary usage.[2] As noted above, we could not constitutionally construe the word "abscond" so as to infer the specific "intent to defraud" from the "naked fact of nonpayment." The context in which the word occurs serves to negate so lax a construction. I.C. § 18–3108 lists four types of conduct which, if proved, may serve as "prima facie proof of the fraudulent intent" required by I.C. § 18–3107:

1. that lodging, food or other accommodation was obtained by any false pretense;

---

2. There is also no merit to the dissent's criticism of the majority opinion for allegedly requiring

> the state to prove DeVoe "absconded" from the premises. This is explained to mean De-Voe must be shown to have secretly, clandestinely, surreptitiously left the restaurant.

If such criticism were justified, I would not be able to join in the majority opinion. As Justice Donaldson notes in his perceptive analysis of the statutory framework, I.C. § 18–3107 does not require proof of "absconding" at all. It requires only proof of "intent to defraud." It is I.C. § 18–3108 which introduces the notion of "absconding" in order, as Justice Donaldson notes, "to give the state one way, but by no means the only way, to prove a violation of I.C. § 18–3107." This insight is entirely correct. It is, however, fully respected by the majority opinion which does not hold that one *must* prove "absconding" in order to prove a violation of I.C. § 18–3107, but which focuses on the "absconding" issue only because the conviction in this case and, indeed, the prosecution's entire presentation "was based upon the *prima facie* case resulting from the defendant's alleged absconding." As further proof that the majority is not unaware of other possible avenues of proof, it should be noted that, before reversing defendant DeVoe's conviction, the majority adds that "[t]here is nothing else in the record from which the Court would be justified in finding the necessary element of fraudulent intent required by I.C. § 18–3107."

2. or by any false or fictitious show or pretense of any baggage or other property;

3. or that any person absconded without paying or offering to pay for such food, lodging or other accommodation;

4. or that any such person surreptitiously removed, or attempted to remove, his or her baggage.

It bears emphasis that each of the four types of behavior listed above is a species of the kind of behavior outlawed in Chapter 31 of Title 18, namely, "False Pretenses, Cheats and Misrepresentations."

It should be remembered further that this statute was passed in 1903. By consulting a dictionary of that era, one discovers that "surreptitious" was then accorded the meaning of "clandestine"; "clandestine," in turn, was said to mean "kept secret"; and "abscond" meant "to depart secretly." Thesaurus Dictionary of the English Language, 1910 edition. In short, "absconding" of the person and "surreptitious" removal of the baggage are all part and parcel of the same statute. Both are suggestive of exactly the same thing, namely, the attempt to exit in other than a noble and forthright manner. The old movies, usually comedies, are replete with scenes showing the extent to which persons would go in spoofing hotel operators into a vision of affluence, only later to depart by the fire escape in the dead of night, both absconding *and* surreptitiously removing their baggage.

All the lines of evidence converge. Regardless of whether one looks to the intent of the drafters of the Idaho Constitution, or to that of the drafters of the statutes, or to legal dictionaries, or to common understanding, one is forced to conclude that the term "absconding debtor" connotes stealth, furtive and clandestine conduct, secret and surreptitious behavior. To hold, as the dissenters would, that prima facie proof of a "fraudulent intent" can be present without the need to prove any of these elements is to eliminate the element of fraudulent intent entirely and to transform the crime

into the naked fact of non-payment of a debt. To repeat: the Constitution of the State of Idaho forbids any such result. Idaho Const., art. 1, § 15.

A final word should be directed toward the question of "statutory presumptions" in the criminal area. Such a presumption is set up by I.C. § 18–3108 which states that proof of "absconding without paying or offering to pay for such food . . . shall be prima facie proof of the fraudulent intent" necessary for conviction under I.C. § 18–3107. Justice Donaldson suggests that the proper interpretation of such a statutory presumption would be

> "to say that when a person asks for and receives accommodations at a hotel for which he does not pay . . . he should assume the burden of showing an honest intent." *Ex Parte Milecke,* 52 Wash. 312, 100 P. 743, 745 (1909).

The trial judge was apparently applying a similar standard when he rejected defendant DeVoe's defenses of forgetfulness and of intoxication and stated instead:

> I would merely point out under 18–3108 of the Idaho Code it does say that if you abscond without paying or offering to pay for the food, lodging or accommodations, that's prima facie evidence of a fraudulent intent
>
> . . . . .
>
> It does appear to the Court you did leave without paying for it; that the State has made out a prima facie case; and I, therefore, feel that the Court is compelled to find you both guilty of fraudulent procurement of food in the amount of thirteen dollars and eighteen cents ($13.18).

Whatever "prima facie proof" means, it certainly cannot be construed to mean that in Idaho a criminal conviction can be obtained and then sustained simply because "the state has made out a prima facie case" by showing departure without paying. In an early case dealing with a similar innkeepers statute, the Pennsylvania Superior Court rebutted any such notion that statutory presumptions could ever displace the state's obligation of proving every element of a crime beyond a reasonable doubt:

The burden of proof is not changed. It still remains on the Commonwealth; the statute only declares that certain acts therein specified shall be prima facie evidence of fraudulent intent; but the burden of proving the defendant guilty still remains on the Commonwealth.

*Commonwealth v. Berryman*, 72 Pa.Super. 479, 482 (1919). According to the *Berryman* court, the precise way in which a court gives effect to the legislative enumeration of certain acts of "prima facie proof" of fraud is as follows:

Evidence of the acts [is] sufficient to take the case to the jury on the question of fraudulent intent, but they may be open to explanation, and because such acts are testified to or proved at the trial does not per force render the defendant guilty under the act.

*Id.* at 483.

The present case, of course, was tried without a jury. It bears noting that it was also tried without counsel for the defendant. DeVoe's companion argued that he failed to pay the bill because he saw the bill and some change in the tray on the table when they were ready to leave and thought it had already been paid. DeVoe's own defense was that he was intoxicated and simply forgot the bill. DeVoe stated that he and his companion had met one another for the first time in many years and were celebrating, perhaps to excess, even before arriving at the restaurant. This account was reenforced by that of the security guard who volunteered the information that his attention was first drawn to DeVoe and his friend because "I have occasion to watch the people who come in that's under the influence of alcohol." It is also uncontradicted that in the hour and one-half during which DeVoe and his friend were at the restaurant, six more drinks were consumed, probably four of them by DeVoe. Finally,

it was uncontradicted that DeVoe and his companion did not flee (did not "tennis shoe it," as they put it) but were still just outside the restaurant premises some 5 to 15 minutes after their supposed "absconding." Upon being apprehended, they immediately offered to pay the bill, which payment was refused by the restaurant on the grounds that *the restaurant* preferred to prosecute.[3]

In short, the prosecutor's entire case was premised only upon the statutory presumption. We are asked to affirm the resulting conviction not because DeVoe's guilt was determined to exist beyond a reasonable doubt, but rather because "the state has made out a prima facie case" by showing departure without paying. Whatever the law may be in Washington, I know of no instance where such a standard has ever before been applied by the Idaho Supreme Court. On the contrary, it has long been rejected when argued in contexts such as this:

So long as the evidence is of itself material and relevant, the statute may make it *prima facie* proof of the ultimate fact which it tends to establish, and may thus shift the *burden of evidence.* Where, however, there is no connection or rational relationship between the fact proved and the ultimate fact to be presumed, such a statute shifts the *burden of proof,* and in a criminal case deprives the defendant of the protection of his constitutional guaranties. (Emphasis supplied.)

*State v. Grimmett*, 33 Idaho 203, 209, 193 P. 380, 381 (1920). To reduce the act of "absconding" to that of mere "non-payment," as the dissenters suggest, would be to strip it of those very elements—such as furtiveness, stealth, secrecy, clandestine and surreptitious behavior—which alone make it "material and relevant" to proving the ultimate fact of criminal intent to defraud at the time of obtaining food or lodging. To

---

**3.** In the words of the trial court, "[I]f it's their policy to prosecute, I certainly can't condemn that and that's not up to me to say anyway." It is, of course, the prerogative of the restaurant to refuse payment and to press charges instead. (In fact, if the crime has already been committed, there should be no bar to accepting

payment *and* pressing charges.) However, it is not the prerogative of the restaurant to determine who is and who is not to be prosecuted. The remark of the trial court betrays an unfortunate mind-set which, I hope, is not shared by the county prosecutor.

insist that a criminal defendant shoulder "the burden of showing an honest intent" whenever we deal with a statutory presumption would be to transform what should be at most a *burden of evidence, i. e.,* the burden of coming forward to explain otherwise suspicious behavior, into an almost insuperable *burden of proof* even in the absence of any suspicious behavior at all. Nearly 60 years ago, *Grimmett* dealt what should have been the death blow to that proposition:

"Such an arbitrary rule of evidence takes away from the defendant his constitutional rights and interferes with his guaranteed equality before the law; and as the supreme court of the United States says, 'violates those fundamental rights and immutable principles of justice which are embraced within the conception of due process of law.' (*Bailey v. Alabama,* 219 U.S. 219, 31 S.Ct. 145, 55 L.Ed. 191, see, also, Rose's U.S. Notes.) Mr. Justice Hughes, who delivered the opinion of the court, further says: 'It is apparent that a constitutional prohibition cannot be transgressed indirectly by the creation of a statutory presumption any more than it can be violated by direct enactment. The power to create presumptions is not a means of escape from the constitutional restrictions.'"

*State v. Grimmett,* 33 Idaho at 209–210, 193 P. at 382 (quoting from *State v. Griffin,* 154 N.C. 611, 70 S.E. 292).[4] *See Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). *See generally* Fletcher, *Two Kinds of Legal Rules: A Comparative Study of Burden-of-Persuasion Practices in Criminal Cases,* 77 Yale L.J. 880 (1968).

It may seem peculiar that a misdemeanor charge amounting to $13.18 serves to generate three separate and lengthy opinions. One cannot take it lightly, however, when the might and resources of the State are put into the service of mere collection

agents and when the result is that a citizen must go through life with a criminal record. Further, it must be remembered that even the smallest criminal cases have frequently, in this country's history, been the means of establishing some of our most profound constitutional protections. Small though this case may be, any decision other than that reached by the majority would amount to a giant step backwards in the criminal jurisprudence of Idaho.

---

4. The analysis in the text of *State v. Grimmett, supra,* demonstrates a method whereby one may give a constitutionally acceptable reading to I.C. § 18–3108. It is not presented, as Justice Donaldson suggests, to render the "death blow" to that statute or, by implication, to rule it unconstitutional.